NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

    Plaintiff and Respondent,

v.

MICHAEL BENJAMIN NORDLOF,

    Defendant and Appellant.

A108464

(Humboldt County
Super. Ct. Nos. CR983644, CR041104)

    Defendant Michael Benjamin Nordlof appeals from a judgment entered after successive trials in which he was convicted of attempted burglary, vehicle theft and possession of a firearm by a felon, and from an order revoking his probation. He contends that the prosecution committed misconduct by suppressing favorable material evidence; that the trial court made numerous instructional errors; that he was denied effective assistance of counsel; and that his convictions are not supported by substantial evidence. We find no merit in any of his contentions and shall affirm.

### Factual and Procedural History

    In 1999, defendant pled no contest to one count of aggravated assault with infliction of great bodily injury. The court imposed a suspended seven-year sentence and placed defendant on probation for five years. In April 2003, a petition was filed alleging that defendant had violated his probation by, among other things, possessing a firearm on March 26, 2003.

Thereafter, a new criminal complaint was filed regarding the March 26 incident.[1] Prior to trial an amended information was filed charging defendant with burglary (Pen. Code,[2] §§ 459, 460 - count one); assault with a firearm (§ 245, subd. (a)(2) - count two); felon in possession of a firearm (§ 12021, subd. (a) - count three); and vehicular theft (Veh. Code, § 10851, subd. (a) - count four). The information also alleged that defendant personally used a firearm under counts two and four (§ 12022.5, subd. (a)(1)), that each of the counts was a serious and violent felony (§§ 1192.7, subds. (c)(8), (c)(18), 667.5, subd. (c)(8)), and that defendant had suffered a prior strike conviction for aggravated assault with personal infliction of great bodily injury (§§ 245, subd. (a)(1), 1192, subds. (c)(8), (c)(23), 667.5, subd. (c)(8)). After trial, the jury returned a verdict finding defendant guilty of count three and found true the enhancement allegation that he had a prior conviction for aggravated assault. The jury could not reach a verdict on counts one, two and four, and the court declared a mistrial as to the remaining counts.

On July 27, 2004, defendant was recharged by a nearly identical second amended information.[3] Following a retrial by a second jury, defendant was found guilty of attempted burglary, a lesser included offense under count one, and vehicular theft under count four. The jury deadlocked on count two and did not return a finding on the firearm enhancements on any of the counts. Thereafter, the court found true the prior strike allegation.

In a consolidated sentencing, the court executed the seven-year sentence on the 1999 assault, designating it as the principal term. The court added consecutive, doubled one-third middle terms on the current convictions and a consecutive five-year serious felony enhancement for a total of 16 years in state prison. Defendant filed a timely notice of appeal in both matters.

---

[1] At the preliminary hearing on the new complaint, the court determined that defendant was in violation of his probation. Judgment and sentencing on the 1999 assault case were set to trail the proceedings in the new case.

[2] All statutory references are to the Penal Code unless otherwise noted.

[3] The only difference between the two informations is that the second amended information includes an additional firearm enhancement under the assault count.

2

The following evidence was presented at trial:[4]

The Prosecution's Case

Marlon Barrera testified that when he and his brother arrived at his home on Humboldt Hill Road around 11:00 a.m. on March 26, 2003, he noticed an unknown car parked in his driveway. At the first trial, Barrera indicated that he thought the car might belong to his gardener, but at the second trial he stated that he did not think his gardener was supposed to be working that day. Barrera parked his brother's car behind the unknown vehicle, unintentionally leaving the keys in the ignition. As he got out of his car, his brother said that he saw someone peeking through the gate to the right of the garage. Barrera ran towards the gate and saw two men running away. At the first trial, Barrera testified that he then went through his house, which he noticed had been "torn apart," and ran to the yard through the back door. At the second trial, Barrera could not recall whether he went into his home first or directly through the gate into the backyard. Once in the backyard, he saw one of the men jump over the fence, but the other could not make it over. The latter turned and pointed a gun at Barrera, saying "I'm going to kill you, Carlos." Barrera tried to hide behind a patio post and then ran into his garage. As he ran, Barrera heard two gunshots. Once inside, he saw the man drive off in his brother's car. He called 911 and told the operator that the man had a gun "like a .45, I don't know." At the first trial he explained that he did not know a lot about guns but "thought" it might be a .45.

Barrera went through the house with the police to identify any missing items. The house was in disarray, with drawers pulled out and belongings strewn about. Barrera reported that a .22 gun was missing. About 30 to 45 minutes later, Barrera was taken to identify his brother's car, which had been abandoned in a remote area near a power plant. Officers found hidden in nearby bushes a suitcase and the car keys. Barrera later identified defendant in a photo lineup as the man with the gun in his backyard. Later that

---

[4] Because the vast majority of the evidence presented at the two trials was the same, we provide only one summary of the facts. Any relevant variation between the testimony at the two trials will be noted.

day, Barrera's fiancé reported that $200 was missing from her purse, which had been in the house.

Barrera's brother confirmed that he saw a man peeking through the gate in Barrera's yard and that when he got to the yard he saw a man aiming a gun at him and his brother. The man told him to stand next to his brother, but he ran into the house through the back door. He was going to call 911, but went back outside after he heard a gunshot. When he did not see anyone in the yard, he went back around the front of the house and saw the man drive away in his car.

Deputy Sheriff Justin Braud testified that with the help of a neighbor, he located the first suspect, David Gray, in a swamp in the neighbor's yard. Braud also testified that a .45 caliber shell casing was found in Barrera's yard about nine feet from a bullet hole in the fence.

Gray testified that he had known defendant for a few years and that they used to "get high together." Although he acknowledged pleading guilty to the first degree burglary of Barrera's home in exchange for a grant of probation, he testified that he could not recall anything that happened on that day.

The car that was left at Barrera's house was impounded and inventoried. In the trunk, officers found various papers bearing defendant's name, receipts for jewelry appraisals, a cell phone, and stereo equipment. Later, an officer determined that the car belonged to defendant's girlfriend.

Defendant's testimony from the first trial was read into the record at his second trial. Defendant testified that he went to Gray's house on March 26 because Gray knew someone who might want to buy the car owned by defendant's girlfriend. They drove together in the girlfriend's car to the house on Humboldt Hill Road to meet with the potential buyer. When no one was home he and Gray decided to wait and play with a dog in the backyard. Gray, who had been looking through the fence, ran away when Barrera arrived. He looked through the fence and saw Barrera walking hurriedly towards the gate with a gun in his hand. Defendant tried to run, but gave up because Barrera was right behind him. He turned around and put his arms in the air. When Barrera's brother

called to Barrera from the other side of the fence, defendant grabbed the top of the gun. During the ensuing struggle, one shot was discharged from the gun, which burned his hand. After the shot was fired, the top of the gun did not slide back into place, which lead him to believe the gun was jammed or out of bullets. He ran towards the front of the house, jumped into Barrera's brother's car and drove away. Later, he parked the car and ran into the bushes. Defendant claimed that although he had never talked to Barrera, he knew who he was because Barerra's ex-girlfriend was also an ex-girlfriend of his. He suggested that Barrera came after him with a gun because there were rumors circulating that defendant was the father of Barerra's son with the ex-girlfriend.

At the second trial, the ex-girlfriend explained that she was Barrera's ex-girlfriend and that she and Barrera had a son together. She admitted that she and defendant were friends, but denied that they had ever dated.

Defendant's probation officer testified that after defendant was identified as a suspect, she advised him through his girlfriend that she would seek an arrest warrant if he did not surrender by the next Monday, April 1. When he did not turn himself in, she filed a petition to revoke his probation. Defendant eventually surrendered and was arrested on December 2, 2003.

### The Defense Case

Defendant testified again at the second trial. His testimony regarding the events of March 26 was substantially the same as at the first trial. Defendant again denied entering Barrera's house and claimed he took the car only to get away from Barrera. He did not call the police or his probation officer after the incident, but later heard through his girlfriend that he had until Monday to turn himself in. He initially stayed in the area for a few weeks and then went to Nevada.

### The Prosecution's Case Reopened

Barrera was recalled to testify regarding two guns that he purchased after the incident. First, on March 27 he bought a Glok. Then, in August of the same year he bought a .45 for his girlfriend. He also testified that a few years before his gardener had

5

found the .22 gun in his backyard and had given it to him. The gun store owner confirmed the purchases.

## Discussion

1.  *Prosecutorial Misconduct: Suppression of Favorable Evidence*

"The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant. [Citation.] [¶] But such evidence must be both favorable to the defendant and material on either guilt or punishment. [Citation.] [¶] Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' [Citations.] The requisite 'reasonable probability' is a probability sufficient to 'undermine[] confidence in the outcome' on the part of the reviewing court." (*In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. omitted.) The prosecution's duty "exists whether or not the evidence has been requested, and it is violated whether or not the failure to disclose is intentional." (*People v. Hayes* (1990) 52 Cal.3d 577, 611.) Defendant contends that the prosecution violated this duty by failing to disclose that police investigators found "for sale" signs when they inventoried his girlfriend's car. He claims this evidence was both favorable and material because it corroborated his testimony that he had gone to Barrera's house to show the car to an interested buyer.

The failure to disclose the signs was first raised in a *Marsden*[5] motion and in a pro se motion for new trial, both made after the jury's verdict in the second trial. Included with these motions was a letter written to defendant by his probation officer after the second trial in which she states, "I was originally told by Nickee that her car was for sale, and you had placed the signs in the car. I later verified this when I spoke to officers. I believe it was Officer S. Quenell that verified that he also saw the signs in the backseat, floorboard area of Nickee's car." In those motions, defendant did not assert that the

---

[5] *People v. Marsden* (1970) 2 Cal.3d 118.

6

prosecution should have disclosed that the signs were recovered from the car. Rather, he argued that he received ineffective assistance of counsel because his attorney failed to investigate whether the officers found the signs when they searched the car. In his pro se submission, he stated that he told his attorney prior to trial that the signs were in the car but that the attorney did not investigate. The Attorney General contends that defendant waived any error with regard to the asserted prosecutorial misconduct by failing to timely raise the issue in the trial court. We need not decide this issue on the basis of waiver, however, as it is clear that there was no prosecutorial misconduct.

"The second element of a *Brady*[6] claim is that the evidence must have been 'suppressed' by the government. [Citations.] Although the prosecution may not withhold favorable and material evidence from the defense, neither does it have the duty to conduct the defendant's investigation for him. [Citation.] If the material evidence is in a defendant's possession or is available to a defendant through the exercise of due diligence, then, at least as far as evidence is concerned, the defendant has all that is necessary to ensure a fair trial, even if the prosecution is not the source of the evidence. [Citations.] Accordingly, evidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it ' "by the exercise of reasonable diligence." ' " (*People v. Salazar* (2005) 35 Cal.4th 1031, 1048-1049.) Defendant acknowledges that he told his attorney about the signs and explained to the trial court that "the reason why the signs were inside the car is due to the tinted windows. The 'for sale' signs had to be placed on the outside so they can be seen but when the car is driven or moved I would have to put them inside the car to keep them from blowing off the car." Defendant's admission that he knew of the signs and told his attorney about them defeats any claim of error relating to the prosecution's failure to disclose their existence.[7]

---

[6] *Brady v. Maryland* (1963) 373 U.S. 83.

[7] Defendant has not reasserted his ineffective assistance of counsel claim on appeal.

7

2.  *CALJIC No. 2.06*

At both trials the jury was instructed pursuant to CALJIC No. 2.06 that "If you find that the defendant attempted to suppress evidence against himself in any manner, such as by the intimidation of a witness, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide." Defendant contends that giving this instruction when possession is an element of the charged crime improperly lightens the prosecutor's burden of proof. He also argues that there was no foundational evidence to support the instruction.

Contrary to defendant's contention, it is well settled that CALJIC No. 2.06 does not lessen the prosecution's burden of proof. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102 (*Coffman*); *People v. Jackson* (1996) 13 Cal.4th 1164, 1223-1224.) The instruction provides that the jury *may* infer that the defendant acted with a consciousness of guilt only if it first finds that the defendant attempted to suppress evidence, and that a defendant's attempt to suppress evidence is not in itself sufficient to prove the defendant's guilt. "The cautionary nature of the instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson, supra,* at p. 1224.)

It is also well settled that CALJIC No. 2.06 is properly given if there is *some* evidence in the record that, if believed, would support an inference that the defendant did suppress evidence, reflecting a consciousness of guilt. (*Coffman, supra,* 34 Cal.4th at p. 102.) The facts supporting such an inference need not be conclusively established before CALJIC No. 2.06 may be given. (*Coffman, supra,* at p. 102.) Here, the prosecutor argued in closing: Defendant "abandoned the victim's car. He hid the keys and the suitcase that might link him to the car in the . . . woods where they were found by Sergeant Hanson. The money is gone. The .22 caliber pistol is gone. The .45 caliber pistol is gone. And he changed his appearance to make identification more difficult when he finally came in some eight months later and surrendered." Defendant acknowledged taking the victim's car and leaving it in a remote area. Although he denied trying to hide

8

the suitcase and keys, the fact that they were found in the bushes is some evidence to the contrary. The evidence was sufficient to support the contested instruction.

The court was not required to find that defendant attempted to suppress the weapons prior to giving this instruction. CALJIC No. 2.06 was given along with a group of general instructions following the instructions that the jury should "[c]onsider the instructions as a whole and each in light of all the others" and that "[t]he order in which the instructions are given has no significance as to their relative importance." The general instruction was not directly linked to the count charging defendant with unlawful possession of a firearm and, in any event, did not give rise to a presumption of guilt on count 3. (See *Coffman, supra*, 34 Cal.4th at p. 102 [CALJIC No. 2.06 does not "give rise to an irrational presumption of guilt of all charges, without limitation, from evidence relevant only to a theft-related offense"].)

3.  *Accomplice Instructions*

Defendant contends the trial court erred in failing to give accomplice instructions with respect to the testimony of David Gray. "[A]n accomplice has a natural incentive to minimize his own guilt before the jury and to enlarge that of his cohorts; accordingly, the law requires an accomplice's testimony be viewed with caution to the extent it incriminates others. [Citations.] Moreover, an accomplice's testimony must be corroborated before a jury may consider it." (*People v. Brown* (2003) 31 Cal.4th 518, 555; § 1111.) "Under section 1111, an accomplice is 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.'" (*People v. Lewis* (2001) 26 Cal.4th 334, 368.) " 'If there is evidence from which the jury could find that a witness is an accomplice to the crime charged, the court must instruct the jury on accomplice testimony.' " (*Id.* at p. 369.)

Here, Gray was called as a witness for the prosecution at both trials. He acknowledged that he knew defendant but could not remember being with him on the day in question or anything else about the events that led to his arrest on March 26th. The prosecutor attempted to impeach Gray with the following questions: "Did you tell a

9

police officer that day that you had just been walking by the residence at 5971 Humboldt Hill Road?"; "Did you tell a police officer that day that you heard gunshots?"; "Did you tell a police officer that you jumped over a fence to get away after you heard the gunshots?"; "Did you tell a police officer that day that you ran down into the swamp?"; "Did you tell a police officer that you had gotten to that neighborhood in a car which was parked over where the shots were fired?" In response to each question Gray answered that he did not recall making the statement to a police officer. Gray admitted to having pled guilty to the burglary of Barrera's house.

We need not decide whether accomplice instructions were required in this case because, assuming they were, any error in this regard was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Williams* (1997) 16 Cal.4th 153, 246 ["Even assuming, arguendo, that section 1111 properly applies to [a witness's] statements, the trial court did not violate the statute. Defendant is simply mistaken in asserting that [the witness's] statements were uncorroborated"].) Here, the only statements that potentially could be interpreted as incriminating were corroborated by defendant's own testimony. Defendant admitted that he and Gray went to the victim's house in his girlfriend's car. He also testified that Gray jumped over the fence to get away from Barrera. Because defendant admitted that a gun was fired during his struggle with Barrera, there was nothing particularly incriminating about the fact that Gray told the police he heard gunshots. Contrary to defendant's assertion, Gray's testimony did not suggest that defendant had a gun. Gray was never asked if defendant had a gun. Rather, Gray was asked only if he had a gun with him that day and he stated that he did not recall having one.

In addition, the court's other instructions sufficiently advised the jury to view Gray's testimony with caution. In *People v. Lewis, supra,* 26 Cal.4th at page 371, the court explained "To the extent defendant argues the jury should have been instructed to view [an alleged accomplice's] testimony with distrust (CALJIC No. 3.18), we find the other instructions given—including '[a] witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others' (CALJIC No. 2.21.2), along with

instructions on a witness's credibility (CALJIC No. 2.20) and the character of a witness for honesty or truthfulness or their opposites (CALJIC No. 2.24)—were sufficient to inform the jury to view [the witness's] testimony with care and caution, in line with CALJIC No. 3.18." Both CALJIC Nos. 2.21.2 and 2.20 were given in this case. In addition, at defendant's request the court gave a special instruction that "There has been evidence in this case indicating that David Gray pled guilty to the burglary for which defendant is currently on trial. Such evidence does not necessarily mean that the defendant is also guilty of that offense, but was admitted only for the limited purpose of evaluating Mr. Gray's credibility. It may not be considered by you for any other purpose." Any potential error in failing to give an accomplice instruction was rendered harmless in the context of the instructions that were given.

4.  *Lesser Included Offenses*

"A trial court must instruct the jury sua sponte on an uncharged offense that is lesser than, and included in, a greater offense with which the defendant is charged 'only if "there is evidence," ' specifically, 'substantial evidence,' ' "which, if accepted . . . , would absolve [the] defendant from guilt of the greater offense" but not the lesser.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 733, italics & citations omitted.) "The instruction shall not be given when there is no evidence the offense was less than that charged." (*People v. Pham* (1993) 15 Cal.App.4th 61, 67.) "An appellate court applies the independent or de novo standard of review to the failure by a trial court to instruct on an uncharged offense that was assertedly lesser than, and included in, a charged offense." (*People v. Waidla, supra*, 22 Cal.4th at p. 733.)

Trespass and Invited Public Access

Defendant contends that the trial court erred in failing to instruct the jury sua sponte on trespass as a lesser included offense of burglary. In *People v. Waidla, supra,* 22 Cal.4th at page 733, the court acknowledged that trespass can be a lesser included offense of burglary as charged, "on the ground that the burglary here, which is based on larceny, comprises elements embracing intent to steal [citation], whereas trespass comprises supposedly the same elements with the pertinent exception of such intent

[citation]." However, in *Waidla*, even though there was some evidence that the defendant did not intend to steal all of the items taken from the victim's home, there was no evidence that he did not intend to steal some of them, so that there was no need to instruct on the lesser trespass offense. Here, there is no substantial evidence on which the jury could have concluded that defendant unlawfully entered Barrera's house without the intent to steal. Defendant asserts that the jury could have concluded that "although there had been no entry into a building and no actual theft therefrom, there had been an unlawful entry onto property." But defendant was not charged with the unlawful entry into the backyard. He was charged with unlawful entry into the house. The complaint alleges that he "did willfully, unlawfully and feloniously enter an inhabited dwelling house . . . occupied by Marlon Barrera, with the intent to commit larceny" Had the jury credited his testimony that he went into the back yard simply to play with the puppy while awaiting the return of the prospective car buyer, he would have been entitled to an acquittal under the instructions that were given.

Defendant's additional contention that the court erred in failing sua sponte to instruct the jury to decide whether he was an implied invitee on Barrera's property is similarly without merit. Again, based on the charging document, the question was not whether he was invited into the yard, but whether he was invited into the house. In any event, there is no substantial evidence to support an implied invitation to the public in either location. Defendant states, " 'An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises or local custom." He fails, however, to point to any evidence based on which the jury could reasonably have concluded he was implicitly invited into Barrera's fenced back yard, let alone his house.

Attempted Burglary

Defendant contends that the trial court erred in instructing the jury on attempted burglary as a lesser included offense of burglary.[8] Defendant argues that if the jury

---

[8] The jury was instructed as follows: "Defendant is accused in Count One of having committed the crime of burglary, a violation of section 459 of the Penal Code. [¶] Every person

credited Barrera's testimony that his house had been ransacked and his gun and money were missing, the jury would have found him guilty of burglary. Once the jury rejected the burglary charge, he argues, there was no evidence of an "ineffectual or abandoned entry" on which to base an attempted burglary conviction. We disagree.

Initially, even if there is an inconsistency between the jury's failure to find defendant guilty of burglary while convicting him of attempted burglary, the inconsistency does not undermine the validity of the conviction so long as there is substantial evidence to support it. (*People v. Lewis* (2001) 25 Cal.4th 610, 655-656.) Moreover, the evidence surrounding the attempted burglary is not as clear cut as defendant suggests. Barrera testified that when he arrived home he saw someone peeking out of his yard and then saw the suspects trying to climb his fence, abandoning their car in his driveway. Defendant conceded that he peeked through the gate and then tried to escape over the backyard fence. This evidence supports a finding of an aborted criminal effort, even if the jury believed defendant's testimony that he never entered the house. Under all of the evidence, including the disheveled condition of the home, the jury more

---

who enters any building with the specific intent to steal, take, and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of that property or with the specific intent to commit a felony is guilty of the crime of burglary in violation of Penal Code section 459. [¶] A building is a structure. [¶] It does not matter whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person entered a building; and [¶] 2. At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property; or at the time of the entry, that person had the specific intent to commit the crime of robbery." (CALJIC No. 14.50.) "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. [¶] In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design." (CALJIC No. 6.00.)

13

likely may have concluded that defendant entered the house with the intent to steal, ransacked the premises looking for something to take, but left without anything when interrupted by Barrera's unexpected return. Although under this version the burglary would have been completed, defendant was not harmed because the jury found only an attempted burglary. (See *People v. Lowen* (1895) 109 Cal. 381, 383-384 [although defendant technically was not guilty of attempted burglary, the commission of burglary implies an attempt to commit it so that conviction of attempted burglary must be upheld where there is substantial evidence of a completed burglary]; *People v. Cuccia* (2002) 97 Cal.App.4th 785, 796 [defendant "cannot complain that the jury chose to find him guilty of attempted grand theft" where there was substantial evidence of a completed grand theft]; *People v. McConnell* (1927) 80 Cal.App. 789, 792 ["A defendant informed against for the crime of burglary may be convicted of an attempt to commit burglary in the second degree, where the evidence tends to sustain a verdict of burglary in the first degree"].) Hence, any error with regard to the attempted burglary instruction was without prejudice to defendant.[9]

5.   *Motion for New Trial on Count 3* (*Felon in Possession of a Firearm*)

In the first trial defendant was found guilty on count 3. At the start of the second trial, defendant learned that Barrera had an alias. Although the prosecutor previously ran a criminal records check on the name "Marlon Barrera" and had not found any crimes of moral turpitude, the prosecutor later confirmed that in fact, Barrera had two social security numbers and one of the numbers showed a February 1999 arrest for attempted alien smuggling and attempted illegal entry. The court held an Evidence Code section 402 hearing at which Barrera admitted to obtaining California identification under his cousin's name. He explained that when he arrived in California he was a minor and could not get identification without a letter from his parents or documentation from school. His cousin gave him a birth certificate with the name "Isidro Torres Reyes" that he used to obtain an identification card. While using this identification, Barrera was

---

[9] For the same reasons, defendant's additional contention that there was insufficient evidence of an attempted burglary is without merit.

stopped at the border in San Diego when he attempted to reenter the United States with a cousin who did not have identification. He testified that he "wasn't formally charged" with alien smuggling, but was given a "ticket" that he is currently "going to court to clear up." The court ruled that Barrera could be impeached with the fact that he had obtained false identification, but did not permit impeachment on the basis of the detention and citation for alien smuggling. Thereafter, when Barrera was asked about the false identification at the second trial he explained that he was 16 when he arrived in California from Nicaragua and that because he was a minor he used a cousin's birth certificate to get a driver's license and a work permit. When old enough, he obtained identification in his own name and stopped using the other identification.

On appeal, defendant contends the trial court erred in denying his motion for new trial, which he asserts was made "on the grounds, *inter alia*, that Barrera had not been impeached, at the first trial, with his use of alias and giving false identifying information under penalty of perjury." Defendant, however, made no such assertion in the trial court. In his new trial motion, defendant asserted only that the prosecutor committed misconduct by assisting in Barrera's perjury. He argued that when first asked during the second trial when he obtained the false identification, Barrera stated that it was in 1995 or 1996, but that after talking with the prosecutor he testified that he obtained the false identification in 1994.[10] Defendant contended that if Barrera had obtained the identification in 1995 or 1996, as he initially testified, his explanation for doing so would have been disproved because by then he would have been over 18 years of age. Defendant asserted that he told his attorney about Barrera's perjury but his attorney said it "doesn't mean much." At no point did defendant seek a new trial on count 3 because he was unable to impeach Barrera with this evidence at the first trial. The contention

---

[10] Defendant's recollection of Barrera's testimony at the Evidence Code section 402 hearing appears to be mistaken. Barrera did not testify that he arrived here in 1995 or 1996, but that he arrived here in 1994 or 1995 and that at the time he was almost 17. Later, he testified that he was 16 when he arrived in 1994.

15

may not be asserted for the first time on appeal. (*People v. Williams* (1957) 153 Cal.App.2d 21, 25.)

A motion for new trial may be granted only upon a ground raised in the motion. (*People v. Johnston* (1940) 37 Cal.App.2d 606, 609; *People v. Skoff* (1933) 131 Cal.App. 235, 240.) Accordingly, "a defendant waives his right to a new trial upon all grounds included within the provisions of [section 1181] unless he specifies the grounds upon which he relies in his application therefor." (*People v. Skoff, supra*, at p. 240.) To hold otherwise would permit the trial court to grant a new trial on its own motion, an act which the court is without authority to do. (*People v. Rothrock* (1936) 8 Cal.2d 21, 23-24; *People v. Sanders* (1990) 221 Cal.App.3d 350, 363 [court is without authority to grant new trial where defendant failed to file statutory motion for new trial].)

Defendant also contends that he was denied effective assistance of counsel because his attorney failed to move for a new trial on count 3 as soon as the new evidence came to light. Accordingly, we consider defendant's argument concerning the inability to impeach Barrera with the false identification evidence insofar as it relates to his ineffective assistance of counsel claim.

Defendant argues that when the false identification came to light between the conclusion of the first trial and the start of the second, there was no practical impediment to the court granting a defense motion for a new trial on count 3 because most of the case was going to be retried in any event. Further, the argument goes, it is reasonably probable that the result would have been more favorable had count 3 been retried before the second jury, so that defense counsel was negligent in failing to request it. "To establish [a claim of] ineffective assistance of counsel, defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failing, the result would have been more favorable to the defendant." (*People v. Scott* (1997) 15 Cal.4th 1188, 1211; *Strickland v. Washington* (1984) 466 U.S. 668, 687.) Because we conclude that defendant has failed to establish prejudice, we need not determine the adequacy of his

representation. (*Strickland v. Washington, supra,* at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Here, the first jury failed to convict on any of the charges against defendant except count 3. The second jury, even with the benefit of the additional impeachment evidence, found defendant guilty of additional charges. As defendant argues, the entire case turned on the credibility of the witnesses, yet the second jury did not find the additional impeachment evidence so compelling as to require it to reject Barrera's testimony with respect to the attempted burglary and vehicular theft charges. Defendant could not have been found guilty of those charges had the second jury disbelieved Barrera. There is no reason to believe that the false identification evidence would have carried any more weight with respect to count 3, the charge that defendant was a felon in possession of a firearm. There is thus no reasonable possibility that the second jury would have reached a different verdict on the possession charge than did the first. Moreover, in assessing a motion for a new trial on count 3, the court would have been required to assess " 'the proper weight to be accorded to the evidence.' " (*People v. Davis* (1995) 10 Cal.4th 463, 524.) In light of Barrera's unchallenged explanation, it is doubtful that the court would have expected a jury to give much weight to the new evidence to impeach Barrera's credibility, as events proved it did not.[11]

## Disposition

The judgment is affirmed.

---

[11] In light of our conclusion that defendant's conviction on count 3 was free of prejudicial error, we reject defendant's additional argument that "[g]iven the invalidity of the jury's verdict on count III," there was insufficient evidence on which to revoke his probation. We similarly reject defendant's claim of cumulative error.

_____
Pollak, J.

We concur:

_____
Parrilli, Acting P. J.

_____
Siggins, J.

A108464