*Killeen, J*

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA | No: _____ |
| Plaintiff and Respondent | |
| *vs* | Court of Appeal No. A108464 |
| MICHAEL BENJAMIN NORDLOFF | |
| Petitioner and Appellant | Humboldt County<br>Superior Court<br>No. CR0411048 |

## PETITION FOR REVIEW
## TO EXHAUST STATE REMEDIES
### [ Rule 33.3 ]

After Decision by the Court of Appeal
Third Appellate District
Filed 29 August 2006

DOCKETED
SAN FRANCISCO

SEP 2 9 2006

By L. CARAMANZANA
No. SF2006A0168

KIERAN D.C. MANJARREZ
Post Office Box 602
Middletown, CA 95461
Tel: 415 / 520-0440
[CBN: 62000]

By Appointment of the Court
under the First Distirct Appellate Project
Independent Case System

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA<br><br>Plaintiff and Respondent<br><br><br>*vs*<br><br>MICHAEL BENJAMIN NORDLOFF<br><br>Petitioner and Appellant | No: _____<br><br><br>Court of Appeal No. A108464<br><br><br>Humboldt County<br>Superior Court<br>No. CR0411048 |

## PETITION FOR REVIEW
## TO EXHAUST STATE REMEDIES
## [ Rule 33.3 ]

After Decision by the Court of Appeal
Third Appellate District
Filed 29 August 2006

KIERAN D.C. MANJARREZ
Post Office Box 602
Middletown, CA 95461
Tel: 415 / 520-0440
[CBN: 62000]

By Appointment of the Court
under the First Distirct Appellate Project
Independent Case System

## TABLE OF CONTENTS

PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ABSENCE OF GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FEDERAL ISSUES RAISED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    THE PROSECUTION'S SUPPRESSION OF FAVORABLE & MATERIAL
      EVIDENCE PREJUDICED APPELLANT'S FEDERAL DUE PROCESS
      RIGHTS TO A FAIR TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   THE PROSECUTION'S SUPPRESSION OF FAVORABLE & MATERIAL
      EVIDENCE PREJUDICED APPELLANT'S SIXTH AMENDMENT AND
      FEDERAL DUE PROCESS RIGHTS TO EFFECTIVE COLLABORATION &
      ASSISTANCE OF COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  THE COURT'S INSTRUCTION THAT THE JURY COULD CONSIDER
      APPELLANT'S SUPPRESSION OF EVIDENCE AS CONSCIOUSNESS OF
      GUILT WAS ERROR UNDER STATE LAW, WHICH LIGHTENED THE
      PROSECUTION'S BURDEN OF PROOF IN CONTRAVENTION OF
      APPELLANT'S FEDERAL DUE PROCESS RIGHTS. . . . . . . . . . . . . . . . . . 13

IV.   THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER
      RELATED OFFENSE OF TRESPASS AND ON THE DOCTRINE OF
      IMPLIED INVITED PUBLIC ACCESS DEPRIVED APPELLANT OF HIS
      FEDERAL DUE PROCESS RIGHTS TO PRESENT A DEFENSE AND TO A
      VERDICT BASED ON THE FULL RANGE OF POSSIBLE VERDICTS.  14

i

V.    APPELLANT WAS DENIED HIS FEDERAL DUE PROCESS RIGHT TO A
      VERDICT ON ATTEMPTED BURGLARY WHICH WAS SUPPORTED BY
      SUBSTANTIAL EVIDENCE PROVED BEYOND A REASONABLE DOUBT.
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.   APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE
      ASSISTANCE OF COUNSEL.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.  CUMULATIVE DUE PROCESS ERROR.  . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

Citation

## CONSTITUTIONAL PROVISIONS RAISED

Page

United States Constitution, Amendment VI & XIV ................ (See Case Cites)

## U.S. SUPREME COURT CASES

*Gray v. Netherland* (1996) 518 U.S. 152 ...................................... 4

*Brady v. Maryland* (1963) 373 U.S. 83 ................................... 4, 11

*Kyles v. Whitley* (1995) 514 U.S. 419 ....................................... 11

*United States v. Bagley* (1985) 473 U.S. 667 ............................... 12

*Francis v. Franklin* (1985) 471 U.S. 307 ........................... 4, 14, 16

*Strickland v. Washington* (1984) 466 U.S. 668 ..................... 4, 12, 26

*Rose v. Clark* (1986) 478 U.S. 570 ......................................... 16

*Yates v. Evatt* (1991) 500 U.S. 391 .................................... 16, 17

*Estelle v. McGuire* (1991) 502 U.S. 62 .................................... 16

*Chapman v. California* (1967) 386 U.S. 18 .................................. 23

*In re Winship* (1970) 397 U.S. 358 ......................................... 24

*Crane v. Kentucky* (1986) 476 U.S. 683 ..................................... 4

*Jackson v. Virginia* (1979) 443 U.S. 307 ............................. 4, 24, 26

*Thompson v. Louisville* (1960) 362 U.S. 199 ........................... 24, 26

## FEDERAL CASES

*United States v Jojayan* (9th Cir 1995) 8 F3d 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brubaker v. Dickson* (9th Cir. 1962) 310 F.2d 30  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Mason,* (9th Cir. 1990) 902 F.2d 1434 . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Lopez,* (9th Cir. 1989) 885 F.2d 1428  . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States  v. Zuniga* (9th Cir. 1993) 6 F.3d 569;  . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Escobar de Bright,* (9th Cir. 1984) 742 F.2d 1196  . . . . . . . . 4, 19, 20, 23

*U.S. v. Morton* (9 th Cir. 1993) 999 F.2d 435  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*U.S. v. Rodriguez* (9th Cir. 1995) 45 F.3d 302  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## CALIFORNIA CASES

*People v. Marsden* (1970) 2 Cal.3d 118  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*In re Brown* (1998) 17 Cal.4th 873  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Ferguson* (1971) 5 Cal.3d 525  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. St. Martin* (1970) 1 Cal.3d 524  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*People v. Enriquez* (1996) 42 Cal.App.4th 661  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Pope,* (1979) 23 Cal.3d 412  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 26

*People v. Ledesma* (1987) 43 Cal.3d 171  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 26

*People v. Carmen* (1951) 36 Cal.2d 768  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Saddler* (1979) 24 Cal.3d 671  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Hannon* (1977) 19 Cal.3d 588  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*People v. Wilson* (2005) 36 Cal.4th 309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*People v Echevarria* (1992) 11 Cal.App.4th 444 . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Huston* (1989) 210 Cal.App.3d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Johnson* (1992) 3 Cal.4th 1183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Cooper* (1991) 53 Cal.3d 771, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Rodrigues* (1994) 8 Cal.4th 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Terry* (1962) 57 Cal.2d 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Williams* (1997) 16 Cal.4th 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Watson* (1956) 46 Cal.2d 818 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Barton* (1995) 12 Cal.4th 186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Wickersham* (1982) 32 Cal.3d 307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Valencia* (2002) 28 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Kipp* (1998) 18 Cal.4th 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Aguilar* (1989) 214 Cal.App.3d 1434 . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Crawford* (1968) 259 Cal.App.2d 874 . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Bright* (1996) 12 Cal.4th 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Morris* (1988) 46 Cal.3d 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Geiger* (1984) 35 Cal.3d 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

*People v. Birks* (1998) 19 Cal.4th 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*People v. Breverman* (1998) 19 Cal.4th 142 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Waidla* (2000) 22 Cal.4th 690 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Barry* (1892) 94 Cal. 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Davis* (1998) 18 Cal.4th 712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Diamond v. Bland* (1970) 3 Cal.3d 653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Popejoy v. Hannon* (1951) 37 Cal.2d 159 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Oettinger v. Stewart* (1944) 24 Cal.2d 133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729 . . . . . . . . . . . . . . . . . 22

*Lorenzana v Superior Court* (1973) 9 Cal. 3d 626 . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Winters* (1983) 149 Cal.App.3d 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Bradley* (1969) 1 Cal.3d 80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Lovelace* (1981) 116 Cal.App.3d 541 . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*North v. Superior Court* (1972) 8 Cal.3d 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Sneed* (1973) 32 Cal.App.3d 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Mathews* (1994) 25 Cal.App.4th 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Coleman* (1904) 145 Cal. 609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Rodriguez* (1999) 20 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v Hatch* (2000) 22 Cal.4th 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Johnson* (1980) 26 Cal.3d 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Kraft* (2000) 23 Cal.4th 978 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Hall* (1981) 30 Cal.3d 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Marquez* (1992) 1 Cal.4th 584 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Bunyard* (1988) 45 Cal.3d 1189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**STATUTES**

Pen. Code, § 245, subd. (a)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pen. Code, § 245, subd. (a)(2)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pen. Code, § 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pen. Code, § 460, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pen. Code, § 667.5, subd. (c)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pen. Code, § 667, subd.(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pen. Code, § 602, subd. (m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Pen. Code, § 1093, subd. (f), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pen. Code, § 1181, subds. (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Pen. Code, § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pen. Code, § 1192.7, subd. (c)(8), (c)(18) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Pen. Code, § 1202.4 subd (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pen. Code, § 2933.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pen. Code, § 12021, subd. (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Pen. Code, § 12022.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Pen. Code, § 12022.5, subd. (a)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Veh. Code, § 10851, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Veh. Code, § 14610, subd. (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

## OTHER AUTHORITIES

Cal. Rules  Crt. Rule 33.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Rules of Crt., Rule 28.2, subd. (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CALJIC No. 2.06  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

CALJIC No. 6.00  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

Witkin & Epstein, Cal. Criminal Law (2d ed. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . 21

# IN THE SUPREME COURT OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA
  Plaintiff and Respondent

  *vs*

MICHAEL BENJAMIN NORDLOFF
  Petitioner and Appellant

No: _____

Court of Appeal No.  A108464

Humboldt County
Superior Court
No. CR0411048

## PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO THE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

MICHAEL BENJAMIN NORDLOFF petitions this court's review for the purpose of exhausting state remedies following the unpublished decision of the Court of Appeal, First Appellate District, Division Three filed 29 August 2006, affirming a judgement of conviction and sentence by the Superior Court of Humboldt County.  (Cal. Rules of Crt., Rule 33.3.) Alternatively, petitioner requests this Court to grant and hold review pending decision  any other cause before this Court  likely to affect the interests of the parties hereto. (Cal. Rules of Crt., Rule 28.2, subd. (d).) A copy of the opinion is appended to this petition.

DATED:  20 September 2006

Kieran D. C. Manjarrez

Attorney for Appellant/Petitioner

1

## ISSUES PRESENTED

1.    Were the juries' verdicts supported by sufficient proof of all elements beyond a reasonable doubt?

2.    Was the suppression of exculpatory evidence that corroborated appellant's defense a material violation of appellant's rights to discovery?

3.    Did the court's instructions adequately support appellant's asserted defense and provide the jury with the full range of legally available verdicts?

4.    Did the court's instructions impermissibly incorporate incorrect presumptions of fact which also lightened the prosecution's burden of proof?

5.    Was appellant's deprived of effective assistance of counsel by virtue of the (a) the suppression of evidence and (b) counsel's failure to either request or object to relevant instructions?

6.    Was appellant's trial fundamentally fair and free of cumulative due process error which casts doubt on the reliability of the verdicts.

## STATEMENT OF ABSENCE OF GROUNDS FOR REVIEW

On information and belief, counsel for petitioner herein is of the opinion that no grounds for review exist or review is unlikely to be granted because: (1) the issues raised herein and material to petitioner's case are not reasonably in dispute and this Court is not a court of error which exists to correct substantive or procedural errors or omissions by intermediate courts of appeal; and/or (2) notwithstanding that petitioner's case presents legal issues which require clarification, it is not likely that this Court would grant review because the issues encompassed are currently pending in other cases under review, have been ruled upon recently, do not implicate sufficient conflict in lower court decisions, or are of insufficient general importance.

This statement is offered in compliance with California Rules of Court, rule 33.3, subdivision (b)(3)(A) and in order to exhaust State remedies prior to seeking federal habeas corpus or other available relief from federal courts. Nothing in this statement is intended to preclude this Court from exercising its discretion to grant granting review or to grant and defer review; and petitioner alternatively so requests if grounds for such review are deemed to exist.

I, Kieran D. C. Manjarrez, state under penalty of perjury that the foregoing is true and correct and that as to any matter stated on information and belief I believe the same to be true. Sworn this 20th day of September 2006, at Middletown, California.

Kieran D. C. Manjarrez

3

## STATEMENT OF FEDERAL ISSUES RAISED
*(Gray v. Netherland* (1996) 518 U.S. 152, 162–163)

This petition and petitioner's claim(s) are based upon and raise issues relating to:

1.  appellant's Sixth Amendment and Due Process rights to jury trial and to findings beyond a reasonable doubt (*Jackson v. Virginia* (1979) 443 U.S. 307);

2.  appellant's Due Process rights to discovery and a fair trial unaffected by the State's suppression of material evidence (*Brady v. Maryland* (1963) 373 U.S. 83);

3.  appellant's Sixth Amendment and Due Process rights to adequately informed and effective assistance of counsel (*Strickland v. Washington* (1984) 466 U.S. 668);

4.  appellant's Due Process rights to a fair trial with correct legal instructions which neither incorporate incorrect presumptions of fact nor lighten the prosecution's burden of proof (*Francis v. Franklin* (1985) 471 U.S. 30);

5.  appellant's Due Process rights to present a defense supported by applicable instructions from the court and to instructions which provide the jury with the full range of legally possible verdicts based on the available facts. (*Crane v. Kentucky* (1986) 476 U.S. 683; *United States v. Escobar de Bright*, (9th Cir. 1984) 742 F.2d 1196, *et prog.* );

6.    appellant's right to a fundamentally fair trial free of cumulative Due

Process error which calls into question the reliability of the verdict(s).

## STATEMENT OF THE CASE

By amended information amended appellant was charged with: **Count I**, burglary (Pen. Code, §§ 459/460, subd. (a)) with personal use of a handgun (Pen. Code, § 12022.5, subd. (a)(1)) ; **Count II**, assault with a firearm (Pen. Code, § 245, subd. (a)(2)) with a serious felony enhancement allegation (Pen. Code § 667, subd.(a)); **Count III**, felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)); **Count IV**, vehicular theft, (Veh. Code, § 10851, subd. (a)) with the personal use of a handgun (Pen. Code, § 12022.5, subd. (a)(1) and

A serious and violent felony allegation (Pen. Code, §§ 1192.7, subd. (c)(8), (c)(18) / 667.5, subd. (c)(8)) was alleged with respect to Counts I and IV; a serious felony enhancement allegation (Pen.Code § 667, subd.(a)) was alleged with respect to Count II and with respect to all counts, the information alleged a prior strike conviction of aggravated assault with personal infliction of great bodily injury. (Pen. Code, § 245, subd. (a)(1), Pen.Code, §§ 1192, subd. (c)(8) / (c)(23), 667.5, subd. (c)(8).) (CT-II 63-65)

Upon trial, the jury was unable to reach a verdict on counts I, II and IV and the court declared a mistrial as to those counts. (CT 142) The jury returned a guilty verdict on Count III (felon in possession) and found true the prior conviction of aggravated assault with personal infliction of great bodily injury. (CT-II 85-86, 142-144)

By second amended information, filed 27 July 2004, in Humboldt County

6

Superior Court, appellant was charged with: **Count I**, burglary (Pen. Code, §§ 459/460, subd. (a) with serious felony allegation (Pen. Code, §§ 1192.7, subd.(c)(18)); **Count II**, assault with a firearm (Pen. Code, § 245, subd. (a)(2)) with a serious felony enhancement (Pen.Code § 667, subd.(a)); **Count III** felon possession of a firearm (Pen. Code, § 12021, subd. (a)(1)); and **Count IV**, vehicular theft, (Veh. Code,§ 10851, subd. (a))    With respect to counts I, II and IV the information alleged personal use of a firearm (Pen.Code, § 12022.5, subd. (a)(1) and a prior strike conviction of aggravated assault with personal infliction of great bodily injury. (Pen. Code, § 245, subd. (a)(1), Pen.Code, §§ 1192, subd. (c)(8) / (c)(23), 667.5, subd. (c)(8).) (CT 152-155)[1]

Following re-trial by jury, appellant was found guilty of: **Count I**, attempted burglary, a lesser included offense and **Count IV**, vehicular theft. The jury returned no findings on the personal use of a firearm allegation (Pen. Code, § 12022.5, subd. (a)(1)) with respect to either count and deadlocked entirely on Count II. (CT-II 257) In a bifurcated trial, the court found true the prior strike

---

[1]    At the conclusion of trial, the court stated for the record that Count IV (vehicular theft) had been renumbered as Count III for the limited purpose of not disclosing to the jury that appellant "had another count." (RT-III 638)  The court's minutes state that the [original] information was read to the jury on 26 July 2004. (CT 151) A second amended information was filed the following day, and explicitly recites the firearm charge in Count III (CT 152-153) The court minutes for that date state that this second amended information was "filed" that date. (CT 157)  On the strength of the trial judge's representation at the conclusion of trial it is assumed that the allegations in Count III in either the first or second amended information were not read to the jury.

allegation. (RT 630-638)

In consolidated sentencing and upon violation of probation for a previous conviction of assault (Pen. Code, § 245, subd. (a)(1)) with infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)), (CT-[VOP] 06; Augmented Minute Order for 3/12/99; see also People's Exhibit 9 & 10); RT-[3/23/99] 2-8; RT-[4/21/99] 29; CT-I 2-3; CT-I 9), the court sentenced appellant to 16 years imprisonment. The court executed the previously suspended sentence of 7 years designating the prior assault count as the principal term. The court added consecutive, doubled one-third middle terms of 16 months each on the current convictions and a consecutive five-year serious felony enhancement. Appellant was awarded 634 days presentence credits (Pen. Code, § 2933.1) and was ordered to pay a combined $1,600.00 restitution fine (Pen. Code, § 1202.4, subd.(b)) and a stayed parole revocation fine in the same amount. (CT-II 281-282, 317)

Timely notices of appeal in both matters were filed on 19 November 2004. (CT I 85; CT II 284) On 29 August 2006 the Court of Appeal, denied appellant's claims and affirmed the judgement and sentence. A petition for rehearing was denied on 9* September 2006.

## STATEMENT OF FACTS

For purposes of this petition the statement of facts in the Court of Appeal decision is incorporated, as supplemented in the arguments. Briefly,

In late morning on the date alleged, appellant and David Gray were seen

fleeing from Marlon Barrera's property. Gun shots rang out. No gun was ever found but there was a bullet hole in the backyard fence. Gray was later found hiding in a nearby swamp. Appellant escaped in Barrera's car which he abandoned several miles away. According to Barrera, he returned home to find appellant and Gray running across his back yard. He yelled at them to stop at which point appellant turned around, pointed a gun and fired before resuming his escape. According to appellant, he and Gray had gone to Barrera's to discuss the potential sale of a car. No one was at home and the two decided to wait for Barrera to return. Appellant busied himself playing with a puppy in a kennel adjacent to the back yard entrance way. Next he saw, Gray was running away. Barrera accosted appellant at gun point and the two struggled . After the gun went off, appellant broke away and fled in Barrera's car which had pulled in behind and blocked his own. Pictures of Barrera's bedroom showed a disarray consistent with ordinary domestic messiness. Appellant was impeached with prior convictions. Barrera was impeached (at the second trial) with admissions of illegal entry into the United States, false statements and use of false identifications.

9

## ARGUMENT

### I.  THE PROSECUTION'S SUPPRESSION OF FAVORABLE & MATERIAL EVIDENCE PREJUDICED APPELLANT'S FEDERAL DUE PROCESS RIGHTS TO A FAIR TRIAL

It was attested at both trials that Deputy Marvin Kirkpatrick searched Nickee Shaw's Toyota Corolla (Lic. 3DHK017) located to the right of Barrera's garage, that he removed from the vehicle the items and documents contained in People's Exhibit 2, and that he did not find any guns, ammunition or burglar tools. (RT-B 102; RT-I 181-185)

Following the jury's verdict at the second trial, during the hearings on appellant's *Marsden*[2] request and his *pro se* motion for new trial (Pen. Code, § 1181), it was revealed that the police had failed to disclose their discovery of a "For Sale" sign recovered from Nickee Shaw's car upon investigation of the alleged incidents. (RT-C 257, 262; RT- Marsden [9/27/04], 658)[3]  Trial counsel represented to the court that the for sale sign was not discovered to him, that he was unaware of its existence and that he had no recollection of appellant

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118

[3] On 31 October 2005, appellant sent the court a letter accompanied by exhibits in which he presented grounds for a new trial, including ineffective assistance of counsel. (CT 288-315)  The court refused to accept the document for filing on the ground that it "doesn't accept ex parte communications." (RT-C 258). However, on 10 November 2005, when appellant orally moved for a new trial and for appointment of substitute counsel, copies were made and the letter was ultimately treated as a written motion with exhibits. (RT-C 267-270)

advising him thereof.  (RT [9/27/04], 661; RT-C 258,292) Counsel stated that he felt the non-disclosure "might be an issue for a new trial because the whole trial turned on [ ] credibility." (RT [9/27/04], 662)  Counsel stated, "It would have been very easy to have asked one of the officers who looked in his car, if it was there. But there was nothing in the police report to that effect, and I didn't know about it, so that's why I never asked about it." (RT-C 292)

The non-disclosed evidence was favorable and material. (*Brady v. Maryland* (1963) 373 U.S. 83, 87) in that *its discovery* by the police provided third party corroboration of appellant's testimony that his purpose in going to the Barrera residence was to negotiate the sale of a car.   This was the gravamen of the defense case.   The gravamen of the prosecution's case was that appellant and Grey had gone to the house in order to burglarize it.   Both cases rested on circumstantial evidence and both cases involved witnesses whose credibility had been impeached.   The prosecution's case was far from convincing as indicated by split or hung verdicts at *two* trials.   It's suppression by the prosecution was clearly prejudicial, in that  there is a reasonable probability that the outcome of his trial would have been different had defendant received the requested discovery. (*United States v Jojayan* (9th Cir 1995) 8 F3d 1315, 1322.)

The suppression of material evidence by the prosecution thus denied appellant his federal due process rights to a fair trial. (*Brady v. Maryland,* supra, 373 U.S., at pg. 87; *Kyles v. Whitley* (1995) 514 U.S. 419, 432-433; *United States v.*

11

*Bagley* (1985) 473 U.S. 667, 682; *In re Brown* (1998) 17 Cal.4th 873, 879; *In re Ferguson* (1971) 5 Cal.3d 525, 532-533.)

II.    **THE PROSECUTION'S SUPPRESSION OF FAVORABLE & MATERIAL EVIDENCE PREJUDICED APPELLANT'S SIXTH AMENDMENT AND FEDERAL DUE PROCESS RIGHTS TO EFFECTIVE COLLABORATION & ASSISTANCE OF COUNSEL.**

The relevant facts are as stated in Part I, *supra*.

The state and federal constitutions guarantee an accused the right to effective assistance of counsel at trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Pope*, (1979) 23 Cal.3d 412, 422; *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 218.)

It has long been recognized that effective assistance of counsel requires, *inter alia* sufficient consultation with the accused and adequate investigated the facts and the law by counsel. (*People v. Marsden*, supra, 2 Cal.3d, at pg. 124; *Brubaker v. Dickson* (9th Cir. 1962) 310 F.2d 30, 32.)   Whether insufficient consultation is due to counsel's personal omission or, as in this case, through a from of subversion by the prosecution's withholding of material information, the failing impacts the investigation of the case and ultimately the trial itself.

The undermining of effective assistance of counsel was prejudicial for the same reasons previously. stated. Clearly, eliciting corroborative evidence was important to the case and, as stated by defense counsel, he would have done so

had he known of the sign's existence. But it goes without saying that no prudent attorney would inquire as to the existence of a "For Sale" sign on cross-examination, at trial, in front of a jury, without first ascertaining the answer to be expected. Thus, in the absence of pre-trial, party depositions, defense counsel was entitled to rely on the assumption that the prosecution had disclosed all material evidence. That assumption coupled with the absence of any mention of a sign would cause counsel to disbelieve appellant to the detriment of appellant's right to effective and full presentation of all evidence in his favor and in support of the defense case.

**III. THE COURT'S INSTRUCTION THAT THE JURY COULD CONSIDER APPELLANT'S SUPPRESSION OF EVIDENCE AS CONSCIOUSNESS OF GUILT WAS ERROR UNDER STATE LAW, WHICH LIGHTENED THE PROSECUTION'S BURDEN OF PROOF IN CONTRAVENTION OF APPELLANT'S FEDERAL DUE PROCESS RIGHTS.**

At both trials, per prosecution request, the court instructed per CALJIC No. 2.06, that if the jury found that appellant had suppressed evidence it could consider that fact as showing a consciousness of guilt.[4] (CT 99, 201) Defense

---

[4] As given, CALJIC No. 2.06 reads: "If you find that a defendant attempted to suppress evidence against himself in nay manner, such as by [strikeout] concealing evidence, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide." (CT 99, 201)

counsel did not object to the instruction at the first trial, but objected to it at the second. (RT-II 330, 428, 431.)

The trial court must instruct on the general principles of law relevant to the issues raised by the evidence and which are necessary for the jury's understanding of the case. (*People v. St. Martin* (1970) 1 Cal.3d 524, 531; *People v. Enriquez* (1996) 42 Cal.App.4th 661, 665) An instruction which states an erroneous presumption and/or which lightens the prosecution's burden of proof on a fact/element necessary to guilt violates a defendant's right to due process to a fair trial and proof beyond a reasonable doubt of all charges. (*Francis v. Franklin* (1985) 471 U.S. 307, 313.)

The court erred in giving a suppression of evidence instruction because (1) because there was no foundational showing or evidence that a gun had been suppressed or that appellant was connected to any such suppression; and (2) the instruction necessarily and implicitly presumed the antecedent fact of possession which was at the ultimate triable issue with respect to Counts II, III and the special allegations.

"It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference." (*People v. Carmen* (1951) 36 Cal.2d 768, 773; *People v. Saddler* (1979) 24 Cal.3d 671, 681; *People v. Hannon* (1977) 19 Cal.3d 588, 597; *People v. Wilson* (2005) 36 Cal.4th 309, 330.)

14

Whether particular facts constitute an act or attempt at suppression such as would support an inference of consciousness of guilt is a question of law.which must be resolved by the trial court before such an instruction can be given to a jury." (*People v. Hannon*, supra, 19 Cal.3d, at pp. 597-598.)

There was no evidence at either trial that appellant had sought to dispose of a weapon. The fact that one could speculate that he done so is immaterial because the law requires more than speculation. Before a suppression instruction can be given there must be facts in the record that "supply the necessary nexus between defendant and the alleged suppression of evidence." (*Hannon*, supra, at pg. 599.) The cases upholding the giving of an instruction per CALJIC No. 2.06 illustrate the necessity and nature of an affirmatively appearing nexus. (See *People v Echevarria* (1992) 11 Cal.App.4th 444, 451 [altering appearance shortly after crime]; *People v. Huston* (1989) 210 Cal.App.3d 192 [same]; *People v. Johnson* (1992) 3 Cal.4th 1183, 1235 [refusal to stand in line up]; (*People v. Cooper* (1991) 53 Cal.3d 771, 797-798, 833 [escapee disposal of prison garb]; *People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1289 [defendant asked neighbors to hide gun]; *People v. Rodrigues* (1994) 8 Cal.4th 1060,1098, 1140 [previously seen knife disappears after victim senses window being rolled down] *People v. Wilson*, supra, 36 Cal.4th 309, 331 [confession as to disposal of murder weapon].) In each of the foregoing cases there was, at a minimum, circumstantial evidence that the defendant had engaged in an act of getting rid of

15

something he was seen to have possessed or admitted possessing. In each of these cases, these evidenced acts of suppression were separate from and in addition to any initial act of previously possessing the thing suppressed.

In the present case, there was no such evidence of suppression even assuming *arguendo* that appellant had possessed the gun based on Barrera's say so. The "mere opportunity" to suppress evidence does not provide the requisite factual foundation for the instruction. (*People v. Terry* (1962) 57 Cal.2d 538, 566, cited with approval in *People v. Williams* (1997) 16 Cal.4th 153, 200-201.) Similarly, here, the fact that he possessed it and *could* have thrown it away did not legally imply that he *did in fact* throw it away.

The equally serious and critical defect of the instruction was not just that it was based on speculation as to an act of suppression but that it implicitly assumed a prior act of possession which was the ultimate issue in the charges of armed assault (Count II) and possession of a firearm (Count III). In this manner, the instruction created a tacit presumption which lightened the prosecution's burden of proof on an element. (*Francis v. Franklin,* supra, 471 U.S. 307, 313 [due process prohibits relieving state "of its burden of persuasion beyond a reasonable doubt of every essential element of a crime"]; *Rose v. Clark* (1986) 478 U.S. 570, 579-581; *Yates v. Evatt* (1991) 500 U.S. 391, 403 [overruled on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, footnote 4].) The instruction's so-called "savings clause" allowing the jury to "find" an act of

16

suppression prior to drawing an inference therefrom did not remediate the defect because the instruction still presumptively incorporated the further antecedent fact of possession.

The giving of the instruction was prejudicial even under *People v. Watson* (1956) 46 Cal.2d 818, 836 because it is reasonably probable that absent the instruction the jury would not have convicted appellant of possessing a firearm. (*People v. Hannon,* supra,19 Cal.3d , at pp. 602-603.) *Hannon*, held that the erroneous giving of a suppression instruction was prejudicial where (as here) the case was balanced on the credibility of two opposed witnesses. The split (and logically inconsistent) verdicts in the case(s)  indicated that the jury was seriously perplexed by the evidence and whom to believe.   In that deadlocked balance circumstantial evidence of guilty-minded conduct was not harmless.   Just as prejudicial was the fact that, in a case where actual possession was never admitted or directly proved, the giving of the instruction presupposed the very act of possession at issue in counts II and III so that the court's instruction's in effect incorporated as a presumption a fact the prosecution was required to prove.

For both of these same reasons, the instruction also violated appellant's federal due process rights to a fair trail in that it cannot be said beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Yates v. Evatt,* supra, 500 U.S., at pp. 402-403.)

17

IV.   **THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER RELATED OFFENSE OF TRESPASS AND ON THE DOCTRINE OF IMPLIED INVITED PUBLIC ACCESS DEPRIVED APPELLANT OF HIS FEDERAL DUE PROCESS RIGHTS TO PRESENT A DEFENSE AND TO A VERDICT BASED ON THE FULL RANGE OF POSSIBLE VERDICTS.**

At both trials, without objection from the defense, the court instructed on attempt (CALJIC 6.0)[5] as a lesser included offense of battery. (CT 115, 227; RT-B 108-113, RT-C 147, RT-II 321-330, RT-II 428-432) Neither side requested and the court did not instruct on trespass as a lesser related offense or on the law governing presence on property pursuant to an implied invitation.

A trial court is obligated to correctly instruct *sua sponte* on all applicable, fundamental principles of law, including defenses and lesser included offenses as are warranted by the evidence. (*People v. Barton,* (1995) 12 Cal.4th 186, 194-195; *People v. Stewart* (1976) 16 Cal.3d 133, 140; Pen. Code, §§ 1093, subd. (f), 1127.)  The trial court's *sua sponte* duty to instruct on an applicable defense

---

[5]  The instruction read: "An attempt to commit a crime consists in two elements, anomaly a specific intent to commit the crime and a direct but ineffectual act done toward its commission. [ ¶ ] In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crimes will constitute an attempt where those acts clearly indicated a certain, unambiguous intent to commit that specific crime.   These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design."

18

arises "when it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*Barton*, supra, at 195-196.) The rule seeks the most accurate possible judgment by "ensur[ing] that the jury will consider the full range of possible verdicts" included in the charge, regardless of the parties' wishes or tactics. (*People v. Wickersham* (1982) 32 Cal.3d 307, 323-324 ; *People v. Birks* (1998) 19 Cal.4th 108, 119.)

Also, as a matter of fundamental fairness and federal due process, "[a] defendant is entitled to an instruction concerning his [or her] theory of the case if it is supported by law and has some foundation in the evidence." (*United States v. Mason*, (9th Cir. 1990) 902 F.2d 1434, 1438 ; *United States v. Lopez*, (9th Cir. 1989) 885 F.2d 1428, 1434, cert. denied, 493 U.S. 1032, (1990); *United States v. Zuniga* (9th Cir. 1993) 6 F.3d 569; *United States v. Escobar de Bright*, (9th Cir. 1984) 742 F.2d 1196, 1201.) The failure to instruct on a defense theory is reversible per se in the Ninth Circuit. (*United States v. Escobar De Bright*, 742 F.2d, at pg 1201.)

The prosecution's theory of the case was that appellant and Grey had been caught in the act of burglarizing Barrera's home. The gravamen of the defense was that appellant and Grey were on the property for the lawful purpose of seeing if Barrera was interested in purchasing a car. The evidence for either theory was circumstantial. The evidence allowed conjecture that Grey at least

19

had been caught while inside the house and thereafter fled. The evidence also allowed the interpretation that while Grey went to knock on the back door appellant waited by the dog kennel at which point Barrera return and assaulted them.    While the court's instructions provided legal support for prosecution's theories of guilt (burglary or attempted burglary), they provided no legal context for the defenses of either trespass or lawful presence on property.  As a result appellant was deprived of his state and federal due process rights to instructions on his theory of the case and the full range of possible verdicts.  (*U.S. v. Escobar De Bright,* supra, 742 F.2d, at pg.1206; *U.S. v. Morton* (9 th Cir. 1993) 999 F.2d 435; *U.S. v. Zuniga,*  supra, 6 F.3d 569; *U.S. v. Rodriguez* (9th Cir. 1995) 45 F.3d 302, 306.)

It is not enough that the jury retained the prerogative to *acquit* appellant of the charges laid.    A jury retains that discretion in every case and were that sufficient, then a failure to instruct on lesser offense or defenses would always be *ipso facto* beside the point.    As has been said frequently enough, courts are not gambling halls and the issues are not  properly adjudicated by all or nothing choices.  (*People v. St. Martin,*  supra, 1 Cal.3d, at pg. 533; *People v. Breverman* (1998) 19 Cal.4th 142, 200.)    In this case, the range of verdicts supported by the evidence included simple trespass and lawful presence on property by virtue of an implied at law invitation.

While *Breverman* affirmed the rule in *People v. Birks,*  supra, 19 Cal.4th

20

108, that trespass was not "generally" a lesser included offense of burglary (*Breverman*, supra, at pg. 183), that holding did not equate to a categorical prohibition of giving such an instruction in every case. In *People v. Waidla* (2000) 22 Cal.4th 690, this Court entertained the issue of whether an instruction on trespass was warranted by the evidence and defense theories of that case. (*Id.*, at pg. 736)[6] *Waidlaw* indicates that there is no mechanical prohibition against giving a lesser included trespass instruction and that such an instruction was warranted in this case.   The legally allowable range of lesser verdicts was *not* covered by an attempted burglary instruction, as there was no evidence to support a finding of an *interrupted* imminent burglary.   To be guilty of an attempt, a defendant must harbor the specific intent to accomplish all elements of the completed offense, and *must perform a direct but ineffectual act in furtherance of that crime.* (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 143, p. 160. [emph. added]; *People v. Valencia* (2002) 28 Cal.4th 1, 7-8 [burglary requires penetration];   *People v. Kipp* (1998) 18 Cal.4th 349, 376 [consumated crime "must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action"]; (*People v. Aguilar* (1989) 214 Cal.App.3d 1434, 1436; *People v. Crawford* (1968) 259 Cal.App.2d 874,

---

6 While this Court concluded "there was no[] substantial evidence that would absolve [defendant] of burglary ... but not trespass ...." (*Id.*, at pg. 736), that did not mean that such substantial evidence could not exist, as it does here.

21

879; *People v. Bright* (1996) 12 Cal.4th 652, 686 (diss. Mosk, J.)[7].) These cited cases show that attempted burglary requires more than being in proximate presence to the structure (allegedly) to be entered.   In the present case, if it was believed that Barrera's house had been ransacked (as opposed to being merely messy), then an inference could be drawn that Grey *had* entered and had rummaged for something to steal.  (*People v. Barry* (1892) 94 Cal. 481,483 [ "a party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter"]; ; *People v. Davis* (1998) 18 Cal.4th 712, 721.)  If the critical fact of household ransacking was *not* believed, then the evidence showed neither a burglary nor an interrupted burglary but only and merely presence on property.   That presence could be viewed as unlawful in which case it would amount to a trespass  (*Diamond v. Bland* (1970) 3 Cal.3d 653, 657 [trespass is "[e]ntering and occupying real property or structures of any kind without the consent of the owner, his agent, or the person in lawful possession thereof"]; Pen. Code, § 602, subd. (m)) or lawful in which case appellant and Grey would be implied invitees. (*Popejoy v. Hannon* (1951) 37 Cal.2d 159, 167;  *Oettinger v.  Stewart* (1944) 24 Cal.2d 133, 136; *O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729, 735;

---

7 Viz; While trying to break into a house to steal property inside, a man sets off a burglar alarm.  Frightened, he leaves without entering the residence. Absent section 664, he would have committed no crime. Under section 664, however, he is subject to prosecution for the crime of attempted burglary."

*Lorenzana v Superior Court* (1973) 9 Cal. 3d 626, 635 [implied invitation to police entry on normal access routes]; *People v. Winters* (1983) 149 Cal.App.3d 705, 707 [police trespass into areas away from normal public access]; *People v. Bradley* (1969) 1 Cal.3d 80, 92 [lawful presence including a "place where visitors might be".]; *People v. Lovelace* (1981) 116 Cal.App.3d 541, 550; *North v. Superior Court* (1972) 8 Cal.3d 301, 308-312 [assessing common habits in the use of domestic and business properties to determine extent of implied invitation]; *People v. Sneed* (1973) 32 Cal.App.3d 535, 540.)    Neither of these two defense alternatives were presented to the jury.  By thus depriving appellant of legal support for his defense and the full range of lawful verdicts the court's instructions denied him his federal due process rights to a fair trial.

"Appellant was permitted to argue this theory of defense. However, instruction by the trial court would weigh more than a thousand words from the most eloquent defense counsel." (*People v. Mathews* (1994) 25 Cal.App.4th 89, 99.) "Permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal." (*United States v.Escobar De Bright,* supra, 742 F.2d, at pp. 1201-1202.)

Assuming the error was not reversible per se, it was certainly not harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The split and hung verdicts at each of two trials indicate that the prosecution's star

23

witness and its case in general were far from solid. The first jury did not reach a verdict on either burglary or attempted burglary. The second jury was clearly looking at lesser alternatives as indicated by its verdict of attempt. With either jury it cannot be plausibly maintained that an instruction on trespass and an instruction that *being* on property was not necessarily unflawful would not have affected the result.

V.    **APPELLANT WAS DENIED HIS FEDERAL DUE PROCESS RIGHT TO A VERDICT ON ATTEMPTED BURGLARY WHICH WAS SUPPORTED BY SUBSTANTIAL EVIDENCE PROVED BEYOND A REASONABLE DOUBT.**

The facts are as hitherto stated.

Federal and state due process requires the prosecution to prove the elements of its case beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358; see also *People v. Coleman* (1904) 145 Cal. 609, 612.) On appeal, the sufficiency of the evidence is evaluated to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) This standard is higher than the superseded "no evidence" rule of *Thompson v. Louisville* (1960) 362 U.S. 199 and to survive challenge the judgment, must be supported by "substantial evidence --that is, evidence that is reasonable, credible, and of solid

24

978, 1035 ["[E]vidence leading only to speculative inferences is irrelevant."].)   In the present case there was "no evidence" of an attempted entry (*Thompson v. Louisville,*  supra, 362 U.S. 199)  and, a fortiori there could be no "substantial evidence" (*Jackson v. Virginia,* supra, 443 U.S, at pp 318-319) in support of the jury's verdict.

## VI.    APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The state and federal constitutions guarantee an accused the right to effective assistance of counsel at trial. (*Strickland v. Washington,*  supra, 466 U.S. 668, 684-685; *People v. Pope*, supra, 23 Cal.3d, at pg 422; *People v. Ledesma* 43 Cal.3d, supra, at pp. 216, 218.)  Reversible ineffective assistance of counsel is established when it is shown that trial counsel  failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*Strickland*, supra, at pp.  687, 691-692; *Ledesma*, supra, at pp. 216,  217-218 .)

As argued in Part I, the prosecution's suppression of material evidence undermined the effectiveness of counsel.  It is axiomatic that counsel cannot formulate effective, competent advice or strategies absent necessary information. (*In  re  Hall* (1981) 30 Cal.3d 408, 426 ["we stress that the exercise of that discretion must be a reasonable and informed"]' *In re Marquez* (1992) 1 Cal.4th

584, 602 [same].)  Why information may be lacking does not alter the fact that it *was* lacking thereby depriving appellant of properly informed legal assistance.

Independently, and for the reasons hitherto stated in Parts II-V, appellant was denied of his right to effective assistance of counsel on account of counsel's failures (1) to object to an instruction on suppression of evidence, (2) to object to the giving of an attempted burglary instruction (3) to request instructions on the lesser offense of trespass and the law appertaining to implied invitees and (4) to move for acquittal notwithstanding the verdict of attempted burglary. (Pen. Code, § 1181.1, subd. (6).)  As argued, existing law supported each of these objections, and each of the objections clearly promoted the chosen defense strategy in the case.    In each case, it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*Strickland*, supra, at pp. 687, 691-692

## VII.    CUMULATIVE DUE PROCESS ERROR.

For the reasons heretofore stated, the individual errors complained of were cumulatively prejudicial to appellant's right to federal due process rights to a fair trial even if they did not amount to a due process violation in isolation. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1236).

27

## CONCLUSION

For the foregoing reasons, this court should certify that petitioner has exhausted his State remedies in this matter or, alternatively, grant review on such bases as this Court deems proper.

### Word Count Certification

The undersigned counsel certifies that the word count for this brief does not exceed : 6934 words.

Dated: 24 September 2006

Respectfully Submitted

KIERAN D. C. MANJARREZ
Attorney for Appellant/Petitioner

28

COPY

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

**FILED**

AUG 2 9 2006

Court of Appeal · First App. Dist.
DIANA HERBERT
By_____
DEPUTY

THE PEOPLE,

    Plaintiff and Respondent,

v.

MICHAEL BENJAMIN NORDLOF,

    Defendant and Appellant.

A108464

(Humboldt County
Super. Ct. Nos. CR983644, CR041104)

      Defendant Michael Benjamin Nordlof appeals from a judgment entered after successive trials in which he was convicted of attempted burglary, vehicle theft and possession of a firearm by a felon, and from an order revoking his probation. He contends that the prosecution committed misconduct by suppressing favorable material evidence; that the trial court made numerous instructional errors; that he was denied effective assistance of counsel; and that his convictions are not supported by substantial evidence. We find no merit in any of his contentions and shall affirm.

### Factual and Procedural History

      In 1999, defendant pled no contest to one count of aggravated assault with infliction of great bodily injury. The court imposed a suspended seven-year sentence and placed defendant on probation for five years. In April 2003, a petition was filed alleging that defendant had violated his probation by, among other things, possessing a firearm on March 26, 2003.

Filed 8/29/06 P. v. Nordlof CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BENJAMIN NORDLOF,<br><br>    Defendant and Appellant. | A108464<br><br>(Humboldt County<br>Super. Ct. Nos. CR983644, CR041104) |

Defendant Michael Benjamin Nordlof appeals from a judgment entered after successive trials in which he was convicted of attempted burglary, vehicle theft and possession of a firearm by a felon, and from an order revoking his probation. He contends that the prosecution committed misconduct by suppressing favorable material evidence; that the trial court made numerous instructional errors; that he was denied effective assistance of counsel; and that his convictions are not supported by substantial evidence. We find no merit in any of his contentions and shall affirm.

### Factual and Procedural History

In 1999, defendant pled no contest to one count of aggravated assault with infliction of great bodily injury. The court imposed a suspended seven-year sentence and placed defendant on probation for five years. In April 2003, a petition was filed alleging that defendant had violated his probation by, among other things, possessing a firearm on March 26, 2003.

1

Thereafter, a new criminal complaint was filed regarding the March 26 incident.[1] Prior to trial an amended information was filed charging defendant with burglary (Pen. Code,[2] §§ 459, 460 - count one); assault with a firearm (§ 245, subd. (a)(2) - count two); felon in possession of a firearm (§ 12021, subd. (a) - count three); and vehicular theft (Veh. Code, § 10851, subd. (a) - count four). The information also alleged that defendant personally used a firearm under counts two and four (§ 12022.5, subd. (a)(1)), that each of the counts was a serious and violent felony (§§ 1192.7, subds. (c)(8), (c)(18), 667.5, subd. (c)(8)), and that defendant had suffered a prior strike conviction for aggravated assault with personal infliction of great bodily injury (§§ 245, subd. (a)(1), 1192, subds. (c)(8), (c)(23), 667.5, subd. (c)(8)). After trial, the jury returned a verdict finding defendant guilty of count three and found true the enhancement allegation that he had a prior conviction for aggravated assault. The jury could not reach a verdict on counts one, two and four, and the court declared a mistrial as to the remaining counts.

On July 27, 2004, defendant was recharged by a nearly identical second amended information.[3] Following a retrial by a second jury, defendant was found guilty of attempted burglary, a lesser included offense under count one, and vehicular theft under count four. The jury deadlocked on count two and did not return a finding on the firearm enhancements on any of the counts. Thereafter, the court found true the prior strike allegation.

In a consolidated sentencing, the court executed the seven-year sentence on the 1999 assault, designating it as the principal term. The court added consecutive, doubled one-third middle terms on the current convictions and a consecutive five-year serious felony enhancement for a total of 16 years in state prison. Defendant filed a timely notice of appeal in both matters.

---

[1] At the preliminary hearing on the new complaint, the court determined that defendant was in violation of his probation. Judgment and sentencing on the 1999 assault case were set to trail the proceedings in the new case.

[2] All statutory references are to the Penal Code unless otherwise noted.

[3] The only difference between the two informations is that the second amended information includes an additional firearm enhancement under the assault count.

The following evidence was presented at trial:[4]

The Prosecution's Case

Marlon Barrera testified that when he and his brother arrived at his home on Humboldt Hill Road around 11:00 a.m. on March 26, 2003, he noticed an unknown car parked in his driveway. At the first trial, Barrera indicated that he thought the car might belong to his gardener, but at the second trial he stated that he did not think his gardener was supposed to be working that day. Barrera parked his brother's car behind the unknown vehicle, unintentionally leaving the keys in the ignition. As he got out of his car, his brother said that he saw someone peeking through the gate to the right of the garage. Barrera ran towards the gate and saw two men running away. At the first trial, Barrera testified that he then went through his house, which he noticed had been "torn apart," and ran to the yard through the back door. At the second trial, Barrera could not recall whether he went into his home first or directly through the gate into the backyard. Once in the backyard, he saw one of the men jump over the fence, but the other could not make it over. The latter turned and pointed a gun at Barrera, saying "I'm going to kill you, Carlos." Barrera tried to hide behind a patio post and then ran into his garage. As he ran, Barrera heard two gunshots. Once inside, he saw the man drive off in his brother's car. He called 911 and told the operator that the man had a gun "like a .45, I don't know." At the first trial he explained that he did not know a lot about guns but "thought" it might be a .45.

Barrera went through the house with the police to identify any missing items. The house was in disarray, with drawers pulled out and belongings strewn about. Barrera reported that a .22 gun was missing. About 30 to 45 minutes later, Barrera was taken to identify his brother's car, which had been abandoned in a remote area near a power plant. Officers found hidden in nearby bushes a suitcase and the car keys. Barrera later identified defendant in a photo lineup as the man with the gun in his backyard. Later that

---

[4] Because the vast majority of the evidence presented at the two trials was the same, we provide only one summary of the facts. Any relevant variation between the testimony at the two trials will be noted.

day, Barrera's fiancé reported that $200 was missing from her purse, which had been in the house.

Barrera's brother confirmed that he saw a man peeking through the gate in Barrera's yard and that when he got to the yard he saw a man aiming a gun at him and his brother. The man told him to stand next to his brother, but he ran into the house through the back door. He was going to call 911, but went back outside after he heard a gunshot. When he did not see anyone in the yard, he went back around the front of the house and saw the man drive away in his car.

Deputy Sheriff Justin Braud testified that with the help of a neighbor, he located the first suspect, David Gray, in a swamp in the neighbor's yard. Braud also testified that a .45 caliber shell casing was found in Barrera's yard about nine feet from a bullet hole in the fence.

Gray testified that he had known defendant for a few years and that they used to "get high together." Although he acknowledged pleading guilty to the first degree burglary of Barrera's home in exchange for a grant of probation, he testified that he could not recall anything that happened on that day.

The car that was left at Barrera's house was impounded and inventoried. In the trunk, officers found various papers bearing defendant's name, receipts for jewelry appraisals, a cell phone, and stereo equipment. Later, an officer determined that the car belonged to defendant's girlfriend.

Defendant's testimony from the first trial was read into the record at his second trial. Defendant testified that he went to Gray's house on March 26 because Gray knew someone who might want to buy the car owned by defendant's girlfriend. They drove together in the girlfriend's car to the house on Humboldt Hill Road to meet with the potential buyer. When no one was home he and Gray decided to wait and play with a dog in the backyard. Gray, who had been looking through the fence, ran away when Barrera arrived. He looked through the fence and saw Barrera walking hurriedly towards the gate with a gun in his hand. Defendant tried to run, but gave up because Barrera was right behind him. He turned around and put his arms in the air. When Barrera's brother

4

called to Barrera from the other side of the fence, defendant grabbed the top of the gun. During the ensuing struggle, one shot was discharged from the gun, which burned his hand. After the shot was fired, the top of the gun did not slide back into place, which lead him to believe the gun was jammed or out of bullets. He ran towards the front of the house, jumped into Barrera's brother's car and drove away. Later, he parked the car and ran into the bushes. Defendant claimed that although he had never talked to Barrera, he knew who he was because Barerra's ex-girlfriend was also an ex-girlfriend of his. He suggested that Barrera came after him with a gun because there were rumors circulating that defendant was the father of Barerra's son with the ex-girlfriend.

At the second trial, the ex-girlfriend explained that she was Barrera's ex-girlfriend and that she and Barrera had a son together. She admitted that she and defendant were friends, but denied that they had ever dated.

Defendant's probation officer testified that after defendant was identified as a suspect, she advised him through his girlfriend that she would seek an arrest warrant if he did not surrender by the next Monday, April 1. When he did not turn himself in, she filed a petition to revoke his probation. Defendant eventually surrendered and was arrested on December 2, 2003.

### The Defense Case

Defendant testified again at the second trial. His testimony regarding the events of March 26 was substantially the same as at the first trial. Defendant again denied entering Barrera's house and claimed he took the car only to get away from Barrera. He did not call the police or his probation officer after the incident, but later heard through his girlfriend that he had until Monday to turn himself in. He initially stayed in the area for a few weeks and then went to Nevada.

### The Prosecution's Case Reopened

Barrera was recalled to testify regarding two guns that he purchased after the incident. First, on March 27 he bought a Glok. Then, in August of the same year he bought a .45 for his girlfriend. He also testified that a few years before his gardener had

5

found the .22 gun in his backyard and had given it to him.  The gun store owner confirmed the purchases.

## Discussion

1.    *Prosecutorial Misconduct: Suppression of Favorable Evidence*

"The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant. [Citation.] [¶] But such evidence must be both favorable to the defendant and material on either guilt or punishment. [Citation.] [¶] Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' [Citations.]  The requisite 'reasonable probability' is a probability sufficient to 'undermine[] confidence in the outcome' on the part of the reviewing court." (*In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. omitted.)  The prosecution's duty "exists whether or not the evidence has been requested, and it is violated whether or not the failure to disclose is intentional." (*People v. Hayes* (1990) 52 Cal.3d 577, 611.)  Defendant contends that the prosecution violated this duty by failing to disclose that police investigators found "for sale" signs when they inventoried his girlfriend's car.  He claims this evidence was both favorable and material because it corroborated his testimony that he had gone to Barrera's house to show the car to an interested buyer.

The failure to disclose the signs was first raised in a *Marsden*[5] motion and in a pro se motion for new trial, both made after the jury's verdict in the second trial.  Included with these motions was a letter written to defendant by his probation officer after the second trial in which she states, "I was originally told by Nickee that her car was for sale, and you had placed the signs in the car.  I later verified this when I spoke to officers.  I believe it was Officer S. Quenell that verified that he also saw the signs in the backseat, floorboard area of Nickee's car."  In those motions, defendant did not assert that the

---

[5]    *People v. Marsden* (1970) 2 Cal.3d 118.

prosecution should have disclosed that the signs were recovered from the car. Rather, he argued that he received ineffective assistance of counsel because his attorney failed to investigate whether the officers found the signs when they searched the car. In his pro se submission, he stated that he told his attorney prior to trial that the signs were in the car but that the attorney did not investigate. The Attorney General contends that defendant waived any error with regard to the asserted prosecutorial misconduct by failing to timely raise the issue in the trial court. We need not decide this issue on the basis of waiver, however, as it is clear that there was no prosecutorial misconduct.

"The second element of a *Brady*[6] claim is that the evidence must have been 'suppressed' by the government. [Citations.] Although the prosecution may not withhold favorable and material evidence from the defense, neither does it have the duty to conduct the defendant's investigation for him. [Citation.] If the material evidence is in a defendant's possession or is available to a defendant through the exercise of due diligence, then, at least as far as evidence is concerned, the defendant has all that is necessary to ensure a fair trial, even if the prosecution is not the source of the evidence. [Citations.] Accordingly, evidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it ' "by the exercise of reasonable diligence." ' " (*People v. Salazar* (2005) 35 Cal.4th 1031, 1048-1049.) Defendant acknowledges that he told his attorney about the signs and explained to the trial court that "the reason why the signs were inside the car is due to the tinted windows. The 'for sale' signs had to be placed on the outside so they can be seen but when the car is driven or moved I would have to put them inside the car to keep them from blowing off the car." Defendant's admission that he knew of the signs and told his attorney about them defeats any claim of error relating to the prosecution's failure to disclose their existence.[7]

---

[6] *Brady v. Maryland* (1963) 373 U.S. 83.

[7] Defendant has not reasserted his ineffective assistance of counsel claim on appeal.

2.    *CALJIC No. 2.06*

At both trials the jury was instructed pursuant to CALJIC No. 2.06 that "If you find that the defendant attempted to suppress evidence against himself in any manner, such as by the intimidation of a witness, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide." Defendant contends that giving this instruction when possession is an element of the charged crime improperly lightens the prosecutor's burden of proof. He also argues that there was no foundational evidence to support the instruction.

Contrary to defendant's contention, it is well settled that CALJIC No. 2.06 does not lessen the prosecution's burden of proof. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102 (*Coffman*); *People v. Jackson* (1996) 13 Cal.4th 1164, 1223-1224.) The instruction provides that the jury *may* infer that the defendant acted with a consciousness of guilt only if it first finds that the defendant attempted to suppress evidence, and that a defendant's attempt to suppress evidence is not in itself sufficient to prove the defendant's guilt. "The cautionary nature of the instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson, supra,* at p. 1224.)

It is also well settled that CALJIC No. 2.06 is properly given if there is *some* evidence in the record that, if believed, would support an inference that the defendant did suppress evidence, reflecting a consciousness of guilt. (*Coffman, supra,* 34 Cal.4th at p. 102.) The facts supporting such an inference need not be conclusively established before CALJIC No. 2.06 may be given. (*Coffman, supra,* at p. 102.) Here, the prosecutor argued in closing: Defendant "abandoned the victim's car. He hid the keys and the suitcase that might link him to the car in the . . . woods where they were found by Sergeant Hanson. The money is gone. The .22 caliber pistol is gone. The .45 caliber pistol is gone. And he changed his appearance to make identification more difficult when he finally came in some eight months later and surrendered." Defendant acknowledged taking the victim's car and leaving it in a remote area. Although he denied trying to hide

8

the suitcase and keys, the fact that they were found in the bushes is some evidence to the contrary. The evidence was sufficient to support the contested instruction.

The court was not required to find that defendant attempted to suppress the weapons prior to giving this instruction. CALJIC No. 2.06 was given along with a group of general instructions following the instructions that the jury should "[c]onsider the instructions as a whole and each in light of all the others" and that "[t]he order in which the instructions are given has no significance as to their relative importance." The general instruction was not directly linked to the count charging defendant with unlawful possession of a firearm and, in any event, did not give rise to a presumption of guilt on count 3. (See *Coffman, supra,* 34 Cal.4th at p. 102 [CALJIC No. 2.06 does not "give rise to an irrational presumption of guilt of all charges, without limitation, from evidence relevant only to a theft-related offense"].)

3.    *Accomplice Instructions*

Defendant contends the trial court erred in failing to give accomplice instructions with respect to the testimony of David Gray. "[A]n accomplice has a natural incentive to minimize his own guilt before the jury and to enlarge that of his cohorts; accordingly, the law requires an accomplice's testimony be viewed with caution to the extent it incriminates others. [Citations.] Moreover, an accomplice's testimony must be corroborated before a jury may consider it." (*People v. Brown* (2003) 31 Cal.4th 518, 555; § 1111.) "Under section 1111, an accomplice is 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' " (*People v. Lewis* (2001) 26 Cal.4th 334, 368.) " 'If there is evidence from which the jury could find that a witness is an accomplice to the crime charged, the court must instruct the jury on accomplice testimony.' " (*Id.* at p. 369.)

Here, Gray was called as a witness for the prosecution at both trials. He acknowledged that he knew defendant but could not remember being with him on the day in question or anything else about the events that led to his arrest on March 26th. The prosecutor attempted to impeach Gray with the following questions: "Did you tell a

9

police officer that day that you had just been walking by the residence at 5971 Humboldt Hill Road?"; "Did you tell a police officer that day that you heard gunshots?"; "Did you tell a police officer that you jumped over a fence to get away after you heard the gunshots?"; "Did you tell a police officer that day that you ran down into the swamp?"; "Did you tell a police officer that you had gotten to that neighborhood in a car which was parked over where the shots were fired?" In response to each question Gray answered that he did not recall making the statement to a police officer. Gray admitted to having pled guilty to the burglary of Barrera's house.

We need not decide whether accomplice instructions were required in this case because, assuming they were, any error in this regard was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Williams* (1997) 16 Cal.4th 153, 246 ["Even assuming, arguendo, that section 1111 properly applies to [a witness's] statements, the trial court did not violate the statute. Defendant is simply mistaken in asserting that [the witness's] statements were uncorroborated"].) Here, the only statements that potentially could be interpreted as incriminating were corroborated by defendant's own testimony. Defendant admitted that he and Gray went to the victim's house in his girlfriend's car. He also testified that Gray jumped over the fence to get away from Barrera. Because defendant admitted that a gun was fired during his struggle with Barrera, there was nothing particularly incriminating about the fact that Gray told the police he heard gunshots. Contrary to defendant's assertion, Gray's testimony did not suggest that defendant had a gun. Gray was never asked if defendant had a gun. Rather, Gray was asked only if he had a gun with him that day and he stated that he did not recall having one.

In addition, the court's other instructions sufficiently advised the jury to view Gray's testimony with caution. In *People v. Lewis, supra*, 26 Cal.4th at page 371, the court explained "To the extent defendant argues the jury should have been instructed to view [an alleged accomplice's] testimony with distrust (CALJIC No. 3.18), we find the other instructions given—including '[a] witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others' (CALJIC No. 2.21.2), along with

instructions on a witness's credibility (CALJIC No. 2.20) and the character of a witness for honesty or truthfulness or their opposites (CALJIC No. 2.24)—were sufficient to inform the jury to view [the witness's] testimony with care and caution, in line with CALJIC No. 3.18." Both CALJIC Nos. 2.21.2 and 2.20 were given in this case. In addition, at defendant's request the court gave a special instruction that "There has been evidence in this case indicating that David Gray pled guilty to the burglary for which defendant is currently on trial. Such evidence does not necessarily mean that the defendant is also guilty of that offense, but was admitted only for the limited purpose of evaluating Mr. Gray's credibility. It may not be considered by you for any other purpose." Any potential error in failing to give an accomplice instruction was rendered harmless in the context of the instructions that were given.

4.   *Lesser Included Offenses*

"A trial court must instruct the jury sua sponte on an uncharged offense that is lesser than, and included in, a greater offense with which the defendant is charged 'only if "there is evidence," ' specifically, 'substantial evidence,' ' "which, if accepted . . . , would absolve [the] defendant from guilt of the greater offense" but not the lesser.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 733, italics & citations omitted.) "The instruction shall not be given when there is no evidence the offense was less than that charged." (*People v. Pham* (1993) 15 Cal.App.4th 61, 67.) "An appellate court applies the independent or de novo standard of review to the failure by a trial court to instruct on an uncharged offense that was assertedly lesser than, and included in, a charged offense." (*People v. Waidla, supra,* 22 Cal.4th at p. 733.)

Trespass and Invited Public Access

Defendant contends that the trial court erred in failing to instruct the jury sua sponte on trespass as a lesser included offense of burglary. In *People v. Waidla, supra,* 22 Cal.4th at page 733, the court acknowledged that trespass can be a lesser included offense of burglary as charged, "on the ground that the burglary here, which is based on larceny, comprises elements embracing intent to steal [citation], whereas trespass comprises supposedly the same elements with the pertinent exception of such intent

11

credited Barrera's testimony that his house had been ransacked and his gun and money were missing, the jury would have found him guilty of burglary. Once the jury rejected the burglary charge, he argues, there was no evidence of an "ineffectual or abandoned entry" on which to base an attempted burglary conviction. We disagree.

Initially, even if there is an inconsistency between the jury's failure to find defendant guilty of burglary while convicting him of attempted burglary, the inconsistency does not undermine the validity of the conviction so long as there is substantial evidence to support it. (*People v. Lewis* (2001) 25 Cal.4th 610, 655-656.) Moreover, the evidence surrounding the attempted burglary is not as clear cut as defendant suggests. Barrera testified that when he arrived home he saw someone peeking out of his yard and then saw the suspects trying to climb his fence, abandoning their car in his driveway. Defendant conceded that he peeked through the gate and then tried to escape over the backyard fence. This evidence supports a finding of an aborted criminal effort, even if the jury believed defendant's testimony that he never entered the house. Under all of the evidence, including the disheveled condition of the home, the jury more

---

who enters any building with the specific intent to steal, take, and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of that property or with the specific intent to commit a felony is guilty of the crime of burglary in violation of Penal Code section 459. [¶] A building is a structure. [¶] It does not matter whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person entered a building; and [¶] 2. At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property; or at the time of the entry, that person had the specific intent to commit the crime of robbery." (CALJIC No. 14.50.) "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. [¶] In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design." (CALJIC No. 6.00.)

likely may have concluded that defendant entered the house with the intent to steal, ransacked the premises looking for something to take, but left without anything when interrupted by Barrera's unexpected return. Although under this version the burglary would have been completed, defendant was not harmed because the jury found only an attempted burglary. (See *People v. Lowen* (1895) 109 Cal. 381, 383-384 [although defendant technically was not guilty of attempted burglary, the commission of burglary implies an attempt to commit it so that conviction of attempted burglary must be upheld where there is substantial evidence of a completed burglary]; *People v. Cuccia* (2002) 97 Cal.App.4th 785, 796 [defendant "cannot complain that the jury chose to find him guilty of attempted grand theft" where there was substantial evidence of a completed grand theft]; *People v. McConnell* (1927) 80 Cal.App. 789, 792 ["A defendant informed against for the crime of burglary may be convicted of an attempt to commit burglary in the second degree, where the evidence tends to sustain a verdict of burglary in the first degree"].) Hence, any error with regard to the attempted burglary instruction was without prejudice to defendant.[9]

5.    *Motion for New Trial on Count 3* (*Felon in Possession of a Firearm*)

In the first trial defendant was found guilty on count 3. At the start of the second trial, defendant learned that Barrera had an alias. Although the prosecutor previously ran a criminal records check on the name "Marlon Barrera" and had not found any crimes of moral turpitude, the prosecutor later confirmed that in fact, Barrera had two social security numbers and one of the numbers showed a February 1999 arrest for attempted alien smuggling and attempted illegal entry. The court held an Evidence Code section 402 hearing at which Barrera admitted to obtaining California identification under his cousin's name. He explained that when he arrived in California he was a minor and could not get identification without a letter from his parents or documentation from school. His cousin gave him a birth certificate with the name "Isidro Torres Reyes" that he used to obtain an identification card. While using this identification, Barrera was

---

[9] For the same reasons, defendant's additional contention that there was insufficient evidence of an attempted burglary is without merit.

14

stopped at the border in San Diego when he attempted to reenter the United States with a cousin who did not have identification. He testified that he "wasn't formally charged" with alien smuggling, but was given a "ticket" that he is currently "going to court to clear up." The court ruled that Barrera could be impeached with the fact that he had obtained false identification, but did not permit impeachment on the basis of the detention and citation for alien smuggling. Thereafter, when Barrera was asked about the false identification at the second trial he explained that he was 16 when he arrived in California from Nicaragua and that because he was a minor he used a cousin's birth certificate to get a driver's license and a work permit. When old enough, he obtained identification in his own name and stopped using the other identification.

On appeal, defendant contends the trial court erred in denying his motion for new trial, which he asserts was made "on the grounds, *inter alia*, that Barrera had not been impeached, at the first trial, with his use of alias and giving false identifying information under penalty of perjury." Defendant, however, made no such assertion in the trial court. In his new trial motion, defendant asserted only that the prosecutor committed misconduct by assisting in Barrera's perjury. He argued that when first asked during the second trial when he obtained the false identification, Barrera stated that it was in 1995 or 1996, but that after talking with the prosecutor he testified that he obtained the false identification in 1994.[10] Defendant contended that if Barrera had obtained the identification in 1995 or 1996, as he initially testified, his explanation for doing so would have been disproved because by then he would have been over 18 years of age. Defendant asserted that he told his attorney about Barrera's perjury but his attorney said it "doesn't mean much." At no point did defendant seek a new trial on count 3 because he was unable to impeach Barrera with this evidence at the first trial. The contention

---

[10] Defendant's recollection of Barrera's testimony at the Evidence Code section 402 hearing appears to be mistaken. Barrera did not testify that he arrived here in 1995 or 1996, but that he arrived here in 1994 or 1995 and that at the time he was almost 17. Later, he testified that he was 16 when he arrived in 1994.

15

may not be asserted for the first time on appeal. (*People v. Williams* (1957) 153 Cal.App.2d 21, 25.)

A motion for new trial may be granted only upon a ground raised in the motion. (*People v. Johnston* (1940) 37 Cal.App.2d 606, 609; *People v. Skoff* (1933) 131 Cal.App. 235, 240.) Accordingly, "a defendant waives his right to a new trial upon all grounds included within the provisions of [section 1181] unless he specifies the grounds upon which he relies in his application therefor." (*People v. Skoff, supra*, at p. 240.) To hold otherwise would permit the trial court to grant a new trial on its own motion, an act which the court is without authority to do. (*People v. Rothrock* (1936) 8 Cal.2d 21, 23-24; *People v. Sanders* (1990) 221 Cal.App.3d 350, 363 [court is without authority to grant new trial where defendant failed to file statutory motion for new trial].)

Defendant also contends that he was denied effective assistance of counsel because his attorney failed to move for a new trial on count 3 as soon as the new evidence came to light. Accordingly, we consider defendant's argument concerning the inability to impeach Barrera with the false identification evidence insofar as it relates to his ineffective assistance of counsel claim.

Defendant argues that when the false identification came to light between the conclusion of the first trial and the start of the second, there was no practical impediment to the court granting a defense motion for a new trial on count 3 because most of the case was going to be retried in any event. Further, the argument goes, it is reasonably probable that the result would have been more favorable had count 3 been retried before the second jury, so that defense counsel was negligent in failing to request it. "To establish [a claim of] ineffective assistance of counsel, defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failing, the result would have been more favorable to the defendant." (*People v. Scott* (1997) 15 Cal.4th 1188, 1211; *Strickland v. Washington* (1984) 466 U.S. 668, 687.) Because we conclude that defendant has failed to establish prejudice, we need not determine the adequacy of his

16

representation. (*Strickland v. Washington, supra,* at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Here, the first jury failed to convict on any of the charges against defendant except count 3. The second jury, even with the benefit of the additional impeachment evidence, found defendant guilty of additional charges. As defendant argues, the entire case turned on the credibility of the witnesses, yet the second jury did not find the additional impeachment evidence so compelling as to require it to reject Barrera's testimony with respect to the attempted burglary and vehicular theft charges. Defendant could not have been found guilty of those charges had the second jury disbelieved Barrera. There is no reason to believe that the false identification evidence would have carried any more weight with respect to count 3, the charge that defendant was a felon in possession of a firearm. There is thus no reasonable possibility that the second jury would have reached a different verdict on the possession charge than did the first. Moreover, in assessing a motion for a new trial on count 3, the court would have been required to assess " 'the proper weight to be accorded to the evidence.' " (*People v. Davis* (1995) 10 Cal.4th 463, 524.) In light of Barrera's unchallenged explanation, it is doubtful that the court would have expected a jury to give much weight to the new evidence to impeach Barrera's credibility, as events proved it did not.[11]

---

[11]   In light of our conclusion that defendant's conviction on count 3 was free of prejudicial error, we reject defendant's additional argument that "[g]iven the invalidity of the jury's verdict on count III," there was insufficient evidence on which to revoke his probation. We similarly reject defendant's claim of cumulative error.

## Disposition

The judgment is affirmed.

_____
Pollak, J.

We concur:

_____
Parrilli, Acting P. J.

_____
Siggins, J.

PROOF OF SERVICE BY MAIL

Title:   People v. NORDLOFF                          Case No.: SO _____ A108464

The undersigned declares:

I am a citizen of the United States of America, over the age of eighteen years and counsel for appellant herein.  My business address is Post Office Box  [ X ] 602  [   ] 278, Middletown, CA 95461.

On  26 September 2006 served the attached, **PETITION FOR REVIEW (RULE 33.3)** on the parties in this action by placing a true copy thereof, in a sealed envelope with first class postage fully prepaid, in the United States Mail at Middletown, California, addressed as follows:

Attorney General, California
455 Golden Gate Avenue
San Francisco CA 94107

First District Appellate Project
730 Harrison Street #201
San Francisco CA 94107

First District Court of Appeal
350 McAllister Street
San Francisco CA 94107

Mr. Michael R. Nordloff
V59215
CSATF
P.O.Box 5244
Corcoran CA 93212

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Sworn this 26 September 2006, at Middletown, California.

[X ] Kieran D. C. Manjarrez
[   ] Stephanie Merrida Grant