IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL B. NORDLOF, ) | No. C 07-4899 MMC (PR) |
| Petitioner, ) | **ORDER GRANTING MOTION TO DISMISS CLAIMS 7-27 IN SECOND AMENDED PETITION AS UNTIMELY; DIRECTING RESPONDENT TO FILE ANSWER ADDRESSING REMAINING CLAIMS; DENYING PETITIONER'S PENDING MOTIONS** |
| v. ) | |
| KEN CLARK, Warden, ) | |
| Respondent. ) | |
| _____ ) | **(Docket Nos. 22, 23, 26, 28)** |

On September 21, 2007, petitioner, a California prisoner incarcerated at Corcoran State Prison and proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Now pending before the Court is respondent's motion to dismiss the petition as untimely or, alternatively, as unexhausted. Petitioner has opposed the motion, respondent has filed a reply, and petitioner has filed a supplemental opposition in response to the reply. Also pending before the Court are a number of non-dispositive motions filed by petitioner.

**BACKGROUND**

In 1999, in the Superior Court of Humboldt County ("Superior Court"), petitioner pleaded guilty to assault with a deadly weapon and admitted an enhancement for great bodily injury. As part of the negotiated disposition, petitioner agreed to a seven-year term, with execution of the sentence suspended. On April 21, 1999, the trial court imposed, but suspended execution of, the seven-year term and placed petitioner on probation for five

years.

On April 1, 2003, a notice of probation violation was filed, based in part on petitioner's involvement in a burglary committed on March 26, 2003. On April 1, 2004, the Humboldt County District Attorney filed an information charging petitioner with a number of felony counts, specifically, burglary with use of a firearm assault with a firearm, felon in possession of a firearm, and vehicle theft with use of a firearm; on June 2, 2004, the information was amended to add prior serious felony and prior strike allegations.

On June 7, 2004, a jury found petitioner guilty of being a felon in possession of a firearm, but deadlocked on the remaining counts. The court declared a mistrial, and also found petitioner in violation of his probation based on the charge on which he was convicted. On August 11, 2004, at a retrial of the remaining counts, a jury found petitioner guilty of attempted first degree burglary and vehicle theft, did not find the firearm use allegations, and deadlocked on the assault charge. Thereafter, the trial court found the prior conviction allegations to be true and dismissed the assault charge. On November 10, 2004, the court sentenced petitioner to the previously suspended term of seven years in the earlier case and to nine years consecutive on the new offenses, for a total of sixteen years.

Petitioner appealed the convictions obtained in the new case. (Mot. to Dismiss ("MTD") Ex. A.) On August 29, 2006, the California Court of Appeal affirmed the judgment. (MTD Ex. C.) On November 15, 2006, the California Supreme Court denied review. (MTD Ex. E.)

On September 21, 2007, petitioner filed the initial petition in the instant action. The petition contained seven claims.

After filing the instant petition, petitioner next commenced collateral proceedings in state court. On February 19, 2008, he filed a petition for a writ of habeas corpus in the Superior Court, raising forty claims. (MTD Ex. F.) The petition was denied for procedural reasons on March 4, 2008. (MTD Ex. G.)

On May 21, 2008, petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal, arguing the Superior Court should have addressed his claims on

the merits. (MTD Ex. H.) That petition was summarily denied on May 23, 2008. (MTD Ex. I.)

On June 4, 2008, petitioner filed a petition for review in the California Supreme Court. (MTD Ex. J.) Review was denied on July 16, 2008. (MTD Ex. K.)

On April 10, 2008, this Court issued an order to show cause with respect to petitioner's original federal petition. On July 23, 2008, before respondent filed a responsive pleading, petitioner filed a motion to amend his petition, accompanied by a proposed amendment. On August 19, 2008, the Court granted petitioner leave to amend the petition.

The first amended petition ("FAP") contained twenty-one new claims for relief, and did not raise the seven claims contained in the original petition. On September 9, 2008, respondent moved to dismiss all of the claims in the FAP as untimely and unexhausted. Petitioner opposed the motion and respondent filed a reply.

On April 23, 2009, the Court denied without prejudice respondent's motion to dismiss, finding petitioner had not intended to waive the claims omitted from his original petition. The Court granted petitioner leave to file a second amended petition containing all of the claims petitioner intends to raise in the instant action.

On May 21, 2009, petitioner filed his second amended petition ("SAP"). (Docket No. 25.) The SAP contains twenty-eight claims for relief.

**DISCUSSION**

A. Petitioner's Pending Motions

The Court first addresses petitioner's pending motions.

1. Motion to File Amended Petition (Docket No. 22)

As noted, after petitioner filed his FAP, respondent moved to dismiss the petition as untimely and unexhausted. On April 20, 2009, petitioner, apparently in response to respondent's motion to dismiss, sent to the court a motion to file an amended petition, together with a proposed amended petition. Petitioner's motion, however, was not received by the court until April 27, 2009. In the interim, while the motion was in transit, the Court, on April 23, 2009, issued its order denying respondent's motion to dismiss and directing

3

petitioner to file a second amended petition containing all of the claims he intended to raise in the instant action. As noted, petitioner filed the SAP on May 21, 2009.

As the SAP filed on May 21, 2009 supercedes the amended petition petitioner sought to file by way of his April 20, 2009 motion, the motion will be denied as moot.

2. Motion for Appointment of Counsel (Docket No. 23)

Petitioner moves for appointment of counsel to represent him in this action, on the ground that the issues raised in the petition are complex and petitioner anticipates further discovery will be required to develop the claims.

The Sixth Amendment's right to counsel does not apply in habeas actions. Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir.), cert. denied, 479 U.S. 867 (1986). Pursuant to statute, however, a district court is authorized to appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require and such person is financially unable to obtain representation." See 18 U.S.C. § 3006A(a)(2)(B).

Here, petitioner has adequately presented his claims and argued his procedural motions. Moreover, the Court anticipates that once an answer to the petition is filed by respondent, the exhibits lodged in support of the answer will further illuminate the arguments in support of petitioner's claims. Additionally, the Court notes that respondent, together with the instant motion to dismiss, has filed copies of all of petitioner's state appellate and habeas corpus briefs. Consequently, the Court concludes that the interests of justice do not require appointment of counsel in the instant case at this time. Should the circumstances change materially at a later stage of the litigation, the Court will reconsider this decision sua sponte. Accordingly, the request for appointment of counsel will be denied.

3. Motion for Extension of Time (Docket No. 28)

On August 6, 2009, petitioner moved for an extension of time to file opposition to the instant motion to dismiss. On August 26, 2009, petitioner filed a timely opposition. Accordingly, the motion for extension of time will be denied as moot.

B. Respondent's Motion to Dismiss

As noted, the SAP contains twenty-eight claims for relief. Claims 1 through 6 were

raised in the original petition filed by petitioner on September 21, 2007. Respondent concedes those claims are exhausted and timely. Respondent argues, however, that each of the remaining twenty-two claims in the SAP must be dismissed as untimely, and that twenty of those claims are also subject to dismissal as unexhausted.

1. <u>Untimeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Under AEDPA, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1] Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. <u>Id.</u> § 2244(d)(2).

When reviewing whether a petition has been timely filed under the AEDPA, the court calculates the one-year period in accordance with Rule 6 of the Federal Rules of Civil Procedure, the general rule for computing time in federal courts. <u>See</u> <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001). Specifically, under Rule 6, the day of the event that triggers the time period is excluded from the computation, while the last day of the time period is included. Fed. R. Civ. P. 6(a)(1). Here, petitioner's judgment became final on direct appeal on February 13, 2007, ninety days after the California Supreme Court denied review, and the date on which the time for petitioner to file a petition for a writ of certiorari from the United States Supreme Court expired. <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999). Applying Rule 6 to the dates herein, the statute began to run on February 14, 2007 and, absent tolling, petitioner had until February 14, 2008, to file a timely habeas corpus petition in federal court.

---

[1] In rare instances, not presented by the instant petition, the limitations period may run from a date later than the date on which the judgment became final. <u>See</u> 28 U.S.C. § 2244(d)(1)(B)-(D).

5

As noted, respondent concedes that the seven claims raised in petitioner's original petition in this matter, which was filed on September 21, 2007, are timely. Respondent argues, however, that the amended claims first raised in the FAP, filed on July 23, 2008, and then raised again in the SAP, filed on May 21, 2009, are untimely, because the filing of the original petition did not toll the statute of limitations. See Duncan v. Walker, 533 U.S. 167, 172 (2001).

As discussed above, the FAP contained twenty-one new claims for relief and did not include the seven claims contained in the original petition. After petitioner informed the Court that it was his intent to proceed with all twenty-eight claims for relief, however, the Court granted petitioner leave to file a SAP containing all of his claims. Thus, the SAP filed by petitioner on May 21, 2009 includes all of the claims petitioner seeks to have addressed by way of the instant action. Consequently, while the SAP technically supercedes the FAP, in light of petitioner's pro se status and his unintentional omission of his original claims from the FAP, the Court, in addressing respondent's timeliness argument, will first consider, as respondent suggests, whether those claims in the SAP that were also raised in the FAP were timely when petitioner filed the FAP. If the claims were not timely when the FAP was filed, they clearly were not timely when the SAP was filed.

      a.     Statutory Tolling

Pursuant to § 2244(d)(2), the one-year statute of limitations is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is not tolled, however, during the period between the date on which the relevant final decision under 28 U.S.C. § 2244(d)(1) is issued and the date on which the first state collateral challenge is filed. Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Thus, in the instant case, the statute began to run on February 14, 2007, the day after the Supreme Court's denial of review became final, and continued to run for 365 days, i.e., until the day petitioner delivered his state petition to prison authorities for mailing to the state

court, February 14, 2008.[2] See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (holding under "mailbox rule" AEDPA one-year limitation period is tolled under 28 U.S.C. § 2244(d)(2) starting on day prisoner delivers state petition to prison authorities for forwarding to court). As the date on which petitioner delivered his state petition to prison authorities for mailing was also the last day of the limitations period, the statute was tolled with only one day remaining for petitioner to file a timely federal habeas corpus petition.

Ordinarily, however, under § 2244(d)(2), the one-year limitations period is tolled from the time a California prisoner files his first state habeas petition until the date on which the state Supreme Court rejects his final collateral challenge. Carey v. Saffold, 536 U.S. 214, 219-20 (2006). Further, under the California Rules of Court, the denial of a petition for review of an appellate court decision is final on the date of filing. Cal. R. Court 8.532(b)(2)(A). Consequently, in the instant case, the limitations period was tolled continuously from February 14, 2008 until July 16, 2008, the date on which the Supreme Court filed its denial of the petition for review. (See MTD Ex. K.).

On July 17, 2008, the day after the state Supreme Court's denial became final, the statute of limitations began to run, and it continued to do so until July 20, 2008, the date on which petitioner signed the proof of service for the FAP and, as evidenced by the notation by prison officials on the back of the envelope that contained the petition, delivered that petition to prison officials for mailing. (See Docket No. 10 at 79, 81.) Accordingly, at the time the FAP was filed, four days not subject to tolling had elapsed. As discussed above, only one of those four days remained available from a prior period of tolling. Consequently, the FAP was filed three days in excess of the 365-day limitations period.

Based on the above-described circumstances, the amended claims raised both in the FAP and SAP are subject to dismissal as untimely unless petitioner can show he is entitled to equitable tolling of the limitations period.

---

[2] Although no proof has been provided with respect to the date petitioner handed his state petition to prison officials for mailing, respondent relies on the date on which petitioner signed the proof of service for the petition, specifically, February 14, 2008. (MTD Ex. F at 126.) Petitioner does not object to the use of this date.

7

b. Equitable Tolling

The United States Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to [the one-year] statute of limitations." Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005). The Ninth Circuit has held, however, that the one-year limitations period may be equitably tolled. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).

Equitable tolling is applicable only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Roy v. Lampert, 455 F.3d 945, 950 (9th Cir. 2006). Significantly, the prisoner must show that the extraordinary circumstances were the cause of his untimeliness. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas petition, tolling will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005). Additionally, the prisoner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence. Bryant v. Arizona Attorney General, 499 F.3d 1056, 1061 (9th Cir. 2007). The prisoner bears the burden of showing he is entitled to equitable tolling, and the determination whether such tolling applies is a fact-specific inquiry. Spitsyn, 345 F.3d at 799.

Here, petitioner claims he is entitled to equitable tolling on three grounds. First, he asserts the limitations period should be tolled for the time during which he was attempting to obtain copies of his first state habeas petition to file in state court. As noted above, petitioner filed his first state habeas petition on February 14, 2008, the last day of the limitations period. Petitioner claims, however, that he submitted his habeas petition to prison authorities to be photocopied four weeks before expiration of the period of limitations and that he did not receive the copies until just before the limitations period expired. In support of his argument that he is entitled to four weeks of equitable tolling, petitioner states it often takes weeks to get legal papers copied and he had no control over when he would get the copies

8

back. The Court finds the alleged four-week delay petitioner experienced in receiving copies does not constitute the type of extraordinary circumstances justifying equitable tolling. In particular, petitioner does not allege that prison officials engaged in any wrongful conduct. Instead, he simply argues that he is entitled to equitable tolling because prison conditions often occasion delays, a situation of which he concedes he was aware. Unlike a complete denial of access to personal legal papers, "[o]rdinary prison limitations" on a prisoner's access to the law library and a copier do not constitute extraordinary circumstances or make it impossible for him to file a timely petition. Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009). Further, petitioner has not alleged facts showing he acted diligently, as he does not explain why he could not have prepared and filed his first state habeas petition long before he sought to have the petition copied. Consequently, petitioner is not entitled to equitable tolling based on the four-week delay in receiving copies of his first state habeas petition.

The second ground asserted by petitioner to justify equitable tolling is based on his contention that after the denial of review of petitioner's direct appeal by the California Supreme Court on November 15, 2006, it took approximately two months, until January 16, 2007, for petitioner to receive his file from appellate counsel. Petitioner's argument is unavailing; at the time petitioner received his legal file, he still had nearly thirteen months, i.e., until February 14, 2008, to file a timely federal habeas petition. Moreover, petitioner managed to file his original federal habeas petition in timely fashion on September 21, 2007. Accordingly, the Court concludes petitioner's delayed access to his legal files does not entitle him to equitable tolling herein.

Lastly, petitioner supports his request for equitable tolling with his assertion that he should receive "gap tolling" for the time period between the filing of his first state habeas petition on February 19, 2008 and his second state habeas petition on May 21, 2008. Respondent, however, has not argued that petitioner is not entitled to such tolling. Instead, respondent has expressly stated that petitioner is entitled to continuous tolling of the limitations period from the date on which petitioner filed his first state habeas petition until

9

1 the date on which the California Supreme Court denied review, i.e., July 16, 2008.

2 Consequently, petitioner's "gap tolling" argument is without merit.

3 Based on the above, the Court concludes petitioner is not entitled to any period of
4 equitable tolling. Accordingly, petitioner's amended claims must be dismissed as untimely
5 unless petitioner can show those claims relate back to the timely claims first filed in the
6 original petition.

   c. Relation Back of Amended Claims

8 Amendments made to a habeas petition after AEDPA's one-year limitations period
9 has run relate back to the date of the original petition when the claim asserted in the amended
10 petition "'arose out of the conduct, transaction, or occurrence set forth or attempted to be set
11 forth in the original pleading'." Mayle v. Felix, 545 U.S. 644, 656 (2005) (citing Fed. R.
12 Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape
13 AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that
14 differ in both time and type from those the original pleading set forth." See id. at 650
15 (finding coerced confession claim did not relate back to original petition that raised factually
16 distinct Confrontation Clause claim). In Mayle, the Supreme Court explicitly rejected the
17 proposition that the "same 'conduct, transaction, or occurrence' [means the] same 'trial,
18 conviction, or sentence.'" Id. at 664. Instead, relation back will only be applied when the
19 original and amended petition state claims that are "tied to a common core of operative
20 facts." Id.; see, e.g., Hebner v. McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding
21 district court properly denied leave to amend petition where original claim challenged
22 admission of evidence at trial and new claim challenged jury instruction concerning such
23 evidence; finding claims were supported by "separate congeries of facts") (citing Mayle, 545
24 U.S. at 646), cert. denied, 129 S. Ct. 2791 (2009).

25 Respondent argues petitioner's original and untimely claims are not tied to a common
26 core of operative facts such that the untimely claims relate back to the original petition.
27 Petitioner has not addressed this argument in his opposition. The Court now considers
28 whether the untimely claims relate back to the timely-filed original petition.

Petitioner raised the following six claims in both his original federal habeas petition and the SAP, which claims, in the SAP, are designated, respectively, Claim 1 through Claim 6: (1) with respect to the charge of vehicle theft, the prosecution suppressed favorable, material evidence that police found a "for sale" sign in the car, which would have supported petitioner's defense that he was trying to sell the car for his girlfriend; (2) because of the prosecution's failure to disclose the existence of the "for sale" sign, petitioner was denied effective assistance of counsel; (3) with respect to the charge of possession of a gun, the trial court erred by giving an instruction on suppression of evidence as relevant to consciousness of guilt, as there was no evidence that petitioner had tried to dispose of a weapon; (4) the trial court erred by failing to instruct the jury on (a) trespass as a lesser-related offense of burglary and (b) the doctrine of implied invited public access; (5) the evidence was not sufficient to support a conviction on the lesser-included offense of attempted burglary; and (6) petitioner was denied effective assistance of counsel because (a) counsel was not informed of the existence of the "for sale" sign, (b) counsel failed to object to the instructions on suppression of evidence and attempted burglary, (c) counsel failed to request instructions on trespass and implied invitees, and (d) counsel failed to move for judgment notwithstanding the verdict with respect to attempted burglary.

As noted, petitioner, in the SAP, raises twenty-two new claims, designated, respectively, Claim 7 through Claim 28. These additional claims are summarized below.

### i. Prosecutorial Misconduct Claims

In his SAP, petitioner raises eight new claims of prosecutorial misconduct.

In Claim 7, as to the charge of possession of a firearm, petitioner alleges that after petitioner had given exculpatory testimony on direct examination at trial, specifically, that a witness had lied to protect the victim from being charged with a crime, the prosecutor engaged in misconduct by cross-examining petitioner about his post-arrest, post <u>Miranda</u> silence. (SAP at 16:14-18:17.)

In Claim 8, petitioner alleges, as to the charge of use of a firearm, the prosecutor engaged in misconduct by failing to correct the testimony of an expert witness with respect to

11

the distance from which the gun was fired. (SAP at 18:18-19:13.)

In Claim 9, petitioner alleges the prosecutor engaged in misconduct by failing to disclose at the first trial that the victim had used a false social security number. (SAP at 19:15-23:21.)

In Claim 11, petitioner alleges the prosecutor engaged in misconduct by failing to disclose evidence that the victim had been arrested for alien smuggling. (SAP at 25:10-22.)

In Claim 12, petitioner alleges the prosecutor engaged in misconduct by failing to correct false testimony with respect to the victim's name. (SAP at 25:24-26:9,)

In Claim 13, petitioner alleges the prosecutor engaged in misconduct by failing to correct false testimony with respect to the reason the victim had obtained false identification. (SAP at 26:11-24.)

In Claim 15, petitioner alleges his right to present a defense was violated by the prosecutor's statement, outside of the presence of the jury, that the prosecutor would move to revoke the probation of petitioner's co-defendant, who had pleaded guilty to burglary, based on the co-defendant's refusal to testify truthfully at trial, as required by his plea agreement. (SAP at 28:13-29:11.)

In Claim 24, petitioner alleges the prosecutor intentionally misrepresented facts by arguing the victim could not identify petitioner at trial because petitioner's hair had grown, when the prosecutor knew petitioner had not been able to get a haircut. (SAP at 35:2-18.)

ii. <u>Ineffective Assistance of Counsel Claims</u>

In his SAP, petitioner raises six new claims alleging ineffective assistance of counsel.

In Claim 14, petitioner alleges he was denied effective assistance of counsel because his trial attorney failed to file a motion to suppress evidence of an illegal photographic lineup. (SAP at 26:25-28:12.)

In Claim 17, petitioner alleges he was denied effective assistance of counsel because his attorney failed to file a motion to introduce evidence concerning ownership of the gun. (SAP at 30:15-31:19.)

In Claim 21, petitioner alleges he was denied effective assistance of counsel because

12

his attorney failed to provide a "911 dispatch log" to the jury. (SAP at 33:8-33:19.)

In claim 22, petitioner alleges he was denied effective assistance of counsel at sentencing because his attorney failed to obtain the preliminary hearing transcript underlying the prior strike allegations, in order to contest petitioner's earlier no contest plea. (SAP at 33:20-34:14.)

In Claim 25, petitioner alleges he was deprived of effective assistance of counsel by reason of his attorney's failure to object to the errors and/or omissions set forth in Claims 7 through 13, and in Claims 15, 16, 18, 20, 23 and 24. (SAP at 35:19-28.)

In Claim 26, petitioner alleges he was deprived of effective assistance of counsel by reason of his appellate counsel's failure to raise Claims "7 through 28" on appeal. (SAP at 36:1-14.)

### iii. Trial Court Error Claims

In his SAP, petitioner raises six new claims of error by the trial court.

In Claim 10, petitioner alleges the trial court erred by excluding evidence that the victim had used different names and engaged in criminal activity by using a false social security number. (SAP at 23:23-25:9.)

In Claim 16, petitioner alleges his right to due process was violated by "judicial misconduct," based on the trial court's questioning of petitioner's co-defendant who had invoked his Fifth Amendment right not to testify. (SAP at 29:12-30:14.)

In Claim 18, petitioner alleges the trial court violated his right to due process at sentencing by making a finding that the stolen vehicle was registered to the victim's brother, and by declining to impose concurrent sentences. (SAP at 31:20-32:7.)

In Claim 19, petitioner alleges the trial court violated his right to due process by imposing an upper-term sentence based on facts that were not proved to a jury. (SAP at 32:8-21.)

In Claim 20, petitioner alleges he was denied a fair trial because, at both trials, "various" instructions were confusing, as evidenced by the jury's questions, the verdicts reached, and the jury's failure to reach a verdict on some of the counts. (SAP at 32:22-33:7.)

In Claim 23, petitioner alleges the trial court violated his right to due process by failing to properly address petitioner's motion to substitute counsel. (SAP at 34:15-35:1.)

#### iv. Error in State Court Post-Conviction Review Process

In Claim 27, petitioner alleges the Superior Court erred by refusing to address, on procedural grounds, his claim of cumulative error, and the California Court of Appeal and California Supreme Court erred by failing to address his claim of error by the Superior Court. (SAP at 36:16-38:4.)

#### v. Cumulative Error

In Claim 28, petitioner alleges the claimed errors, taken together, were prejudicial to his right to a fair trial, even if they did not amount to a due process violation when considered individually. (SAP at 38:6-11.)

### d. Conclusion

Having reviewed the original and amended claims, the Court concludes that petitioner's Claims 7 through 27 do not relate back to the claims timely filed in the original petition. As noted, Claims 1 through 6 in the original petition allege prosecutorial misconduct and ineffective assistance of counsel based on the prosecution's non-disclosure of the existence of a "for sale" sign related to the charge of vehicle theft (Claims 1 and 2); instructional error based on the trial court's having instructed the jury on consciousness of guilt with respect to the charge of possession of a firearm, and having failed to instruct the jury on trespass as a lesser-related offense and the doctrine of implied invited public access with respect to the burglary charge (Claims 3 and 4); insufficiency of the evidence to support the conviction for attempted burglary (Claim 5); and ineffective assistance of counsel based on counsel's failure to address the above errors (Claim 6). By contrast, Claims 7 through 27, as described above, are based on discrete occurrences that do not share a common core of operative facts with petitioner's six original claims. Under such circumstances, Claims 7 through 27 do not relate back to the original petition, and, accordingly, the Court will grant

respondent's motion to dismiss Claims 7 through 27 as untimely.[3]

The Court finds, however, petitioner's claim of cumulative error, does, in part, relate back to the claims in the original petition. Specifically, to the extent petitioner alleges in Claim 28 that the cumulative effect of the six errors raised in the original petition rises to the level of a due process violation, such claim and the six original claims are tied to a common core of operative facts. Petitioner's cumulative error claim does not, however, relate back to the original petition to the extent such claim is based on any of the untimely claims of error raised in Claims 7 through 27. Accordingly, petitioner may proceed on his cumulative error claim only to the extent such claim is based on the six errors raised in the original petition.[4]

2. <u>Actual Innocence</u>

Lastly, petitioner, in his opposition, argues that all of his untimely claims should be allowed to proceed under the "fundamental miscarriage of justice" exception applicable to successive, abusive, or procedurally defaulted claims raised in federal habeas petitions. A federal court may hear the merits of successive, abusive, or procedurally defaulted claims where the failure to hear the claims would constitute a "miscarriage of justice." <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-40 1992). As the Supreme Court explained in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the exception is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Id.</u> at 327. To date, neither the Supreme Court nor the Ninth Circuit has decided

---

[3] Additionally, Claim 27, in which petitioner alleges a due process violation resulting from the Superior Court's dismissal of his claims on procedural grounds, is not cognizable. Federal habeas corpus relief is unavailable for violations of state law or alleged error in the interpretation or application of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). In particular, such relief is unavailable for alleged error in the state post-conviction review process. <u>Franzen v. Brinkman</u>, 877 F.2d 26, 26 (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1012 (1989). A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." <u>Longford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1996). Accordingly, Claim 27 is subject to dismissal as meritless.

[4] As noted, respondent argues that petitioner's amended claims are not only untimely but also are unexhausted. In light of the Court's finding finds that Claims 7 through 27 are untimely and do not relate back to the original petition, the Court does not reach herein the issue of exhaustion with respect to those claims. The Court finds, however, that petitioner fairly presented, and thereby exhausted Claim 28, his cumulative error claim, by way of his petition for review to the California Supreme Court.

15

whether AEDPA's statute of limitations is subject to such exception. See Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (reserving issue of whether actual innocence exception applies to time-barred petitions; remanding to district court to determine whether actual innocence claim established). Here, as set forth below, petitioner has set forth no evidence that would support a claim of actual innocence, and, consequently, this Court likewise will not address the general availability of the exception.

In order for barred claims to pass through "Schlup's gateway," see id., petitioner must establish his factual innocence of the crime, and not mere legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623 (1998); Jaramillo v. Stewart, 340 F.3d 877, 882-83 (9th Cir. 2003). "To be credible, such a claim [of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. It is not enough that the evidence show the existence of reasonable doubt; the petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him" in light of the new evidence. Id. at 329.

Here, petitioner asks the Court to consider his claims under the actual innocence exception but does not set forth the reasons why he qualifies for such relief. Although petitioner states that he presented an actual innocence claim in his state habeas petitions, he provides no page references, and the Court, having reviewed the petitions, finds no such claim expressly raised therein. (See MTD Exs. F, H, J.) Further, none of petitioner's claims go to the question of whether he is factually, rather than legally, innocent of the crimes for which he was convicted. In particular, none of the claims contain allegations of factual innocence based on new reliable evidence that was not presented at the time of trial. Lastly, petitioner has not shown it is more likely than not that no reasonable jury would have found him guilty beyond a reasonable doubt based on any of the claims raised. Accordingly, the Court finds the actual innocence exception is not applicable herein.

### 3. Conclusion

In sum, the Court finds Claims 7 through 28 in the SAP are not timely filed and that petitioner is not entitled to equitable tolling of the limitations period with respect thereto. Further, Claims 7 through 27 do not relate back to the timely claims first raised in the original petition, and petitioner is not entitled to have those additional claims considered under the actual innocence exception. Petitioner's cumulative error claim, Claim 28, however, has been exhausted and relates back to the original petition to the extent it is based on the cumulative effect of the errors raised in petitioner's six timely filed claims. Accordingly, respondent's motion to dismiss Claims 7 through 27 in the SAP will be granted and respondent's motion to dismiss Claim 28 will be granted in part and denied in part.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Petitioner's motions to file an amended petition, for appointment of counsel, and for an extension of time are hereby DENIED. (Docket Nos. 22, 23, 28.)

2. Respondent's motion to dismiss Claims 7 through 27 in the SAP as untimely is hereby GRANTED; respondent's motion to dismiss Claim 28 is GRANTED to the extent such claim is based on Claims 7 through 27 and is otherwise DENIED. (Docket No. 26.)

3. Respondent shall file with the Court and serve on petitioner, within **sixty (60)** days of the date this order is filed, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted based on Claims 1 through 6 and Claim 28 in the SAP. Respondent shall file with the answer and serve on petitioner a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.

If petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on respondent's counsel within **thirty (30)** days of the date the answer is filed.

4. Petitioner is reminded that all communications with the Court must be served on respondent by mailing a true copy of the document to respondent's counsel.

5. It is petitioner's responsibility to prosecute this case. Petitioner must keep the Court and respondent informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

This order terminates Docket Nos. 22, 23, 26 and 28.

IT IS SO ORDERED.

DATED: March 3, 2010

_____
MAXINE M. CHESNEY
United States District Judge