IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL B. NORDLOF, | ) No. C 07-4899 MMC (PR) |
| Petitioner, | ) **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; GRANTING RESPONDENT LEAVE TO FILE OVERSIZED BRIEF; DIRECTIONS TO CLERK** |
| v. | ) |
| CONNIE GIPSON, Warden, | ) |
| Respondent. | ) |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Michael B. Nordlof, who proceeds pro se and challenges the validity of a judgment obtained against him in state court.[1] Respondent has filed an answer to the petition, and petitioner has filed a traverse.[2]

## I. PROCEDURAL HISTORY

In 1999, in the Superior Court of Humboldt County ("Superior Court"), petitioner pleaded guilty to assault with a deadly weapon and admitted an enhancement alleging infliction of great bodily injury. As part of the negotiated disposition, petitioner agreed to a seven-year term, with execution of the sentence suspended. On April 21, 1999, the trial court

---

[1] Petitioner named Ken Clark, former warden of Corcoran State Prison, the facility at which petitioner is incarcerated, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Connie Gipson, the current warden of Corcoran State Prison, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

[2] Good cause appearing, respondent's request to file an oversized brief in support of the answer will be granted.

1  imposed, but suspended execution of, the seven-year term and placed petitioner on probation
2  for five years.

3       On April 1, 2003, a notice of probation violation was filed, based in part on
4  petitioner's involvement in a burglary committed on March 26, 2003. On April 1, 2004, the
5  Humboldt County District Attorney filed an information charging petitioner with a number of
6  felony counts, specifically, burglary with use of a firearm, assault with a firearm, felon in
7  possession of a firearm, and vehicle theft with use of a firearm; on June 2, 2004, the
8  information was amended to add prior serious felony and prior strike allegations.

9       On June 7, 2004, a jury found petitioner guilty of being a felon in possession of a
10 firearm, but deadlocked on the remaining counts. The trial court declared a mistrial, and also
11 found petitioner in violation of his probation based on the charge on which he was convicted.
12 On August 11, 2004, at a retrial of the remaining counts, a jury found petitioner guilty of
13 attempted first degree burglary and vehicle theft, but did not find the firearm use allegations,
14 and deadlocked on the assault charge. Thereafter, the trial court found the prior conviction
15 allegations to be true and dismissed the assault charge. On November 10, 2004, the trial
16 court sentenced petitioner to the previously suspended term of seven years on the earlier
17 offense and to nine years consecutive on the new offenses, for a total of sixteen years.

18      Petitioner appealed the convictions obtained in the new case. (Ex. C.)[3] On August 29,
19 2006, the California Court of Appeal affirmed the judgment. (Ex. F.) On November 15,
20 2006, the California Supreme Court denied review. (Ex. J.)

21      On September 21, 2007, petitioner filed the initial petition in the instant action, which
22 petition contained seven claims.

23      Petitioner next commenced collateral proceedings in state court. On February 19,
24 2008, he filed a petition for a writ of habeas corpus in the Humboldt County Superior Court,
25 raising forty claims (Mot. to Dismiss ("MTD") Ex. F), which petition was denied for
26 procedural reasons on March 4, 2008 (MTD Ex. G). On May 21, 2008, petitioner filed a

27

28     [3] Except as otherwise specified, all references herein to exhibits are to exhibits submitted by respondent in support of the Answer.

2

petition for a writ of habeas corpus in the California Court of Appeal, arguing the Superior Court should have addressed his claims on the merits (MTD Ex. H); that petition was summarily denied on May 23, 2008 (MTD Ex. I). On June 4, 2008, petitioner filed a petition for review in the California Supreme Court (MTD Ex. J); review was denied on July 16, 2008 (MTD Ex. K).

On August 19, 2008, petitioner filed in the instant action a first amended petition ("FAP"), containing twenty-one new claims for relief. The FAP did not include, however, the claims raised in the original petition. The Court thereafter afforded petitioner leave to file a second amended petition ("SAP"), containing all of the claims petitioner intended to raise in the instant action. On May 21, 2009, petitioner filed the SAP, which contained all twenty-eight claims for relief.

By order filed March 3, 2010, the Court granted respondent's motion to dismiss, as untimely, claims 7 through 27 in the SAP, and directed respondent to file an answer to the remaining claims raised therein. Respondent thereafter filed an answer and petitioner filed a traverse.

## II. STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

*The Prosecution's Case*

Marlon Barrera ["Barrera"] testified that when he and his brother arrived at his home on Humboldt Hill Road around 11:00 a.m. on March 26, 2003, he noticed an unknown car parked in his driveway. At the first trial, Barrera indicated that he thought the car might belong to his gardener, but at the second trial he stated that he did not think his gardener was supposed to be working that day. Barrera parked his brother's car behind the unknown vehicle, unintentionally leaving the keys in the ignition. As he got out of his car, his brother said that he saw someone peeking through the gate to the right of the garage. Barrera ran towards the gate and saw two men running away. At the first trial, Barrera testified that he then went through his house, which he noticed had been "torn apart," and ran to the yard through the back door. At the second trial, Barrera could not recall whether he went into his home first or directly through the gate into the backyard. Once in the backyard, he saw one of the men jump over the fence, but the other could not make it over. The latter turned and pointed a gun at Barrera, saying "I'm going to kill you, Carlos." Barrera tried to hide behind

3

a patio post and then ran into his garage. As he ran, Barrera heard two gunshots. Once inside, he saw the man drive off in his brother's car. He called 911 and told the operator that the man had a gun "like a .45, I don't know." At the first trial he explained that he did not know a lot about guns but "thought" it might be a .45.

Barrera went through the house with the police to identify any missing items. The house was in disarray, with drawers pulled out and belongings strewn about. Barrera reported that a .22 gun was missing. About 30 to 45 minutes later, Barrera was taken to identify his brother's car, which had been abandoned in a remote area near a power plant. Officers found hidden in nearby bushes a suitcase and the car keys. Barrera later identified [petitioner] in a photo lineup as the man with the gun in his backyard. Later that day, Barrera's fiancé reported that $200 was missing from her purse, which had been in the house.

Barrera's brother confirmed that he saw a man peeking through the gate in Barrera's yard and that when he got to the yard he saw a man aiming a gun at him and his brother. The man told him to stand next to his brother, but he ran into the house through the back door. He was going to call 911, but went back outside after he heard a gunshot. When he did not see anyone in the yard, he went back around the front of the house and saw the man drive away in his car.

Deputy Sheriff Justin Braud ["Braud"] testified that with the help of a neighbor, he located the first suspect, David Gray, in a swamp in the neighbor's yard. Braud also testified that a .45 caliber shell casing was found in Barrera's yard about nine feet from a bullet hole in the fence.

Gray testified that he had known [petitioner] for a few years and that they used to "get high together." Although he acknowledged pleading guilty to the first degree burglary of Barrera's home in exchange for a grant of probation, he testified that he could not recall anything that happened on that day.

The car that was left at Barrera's house was impounded and inventoried. In the trunk, officers found various papers bearing [petitioner's] name, receipts for jewelry appraisals, a cell phone, and stereo equipment. Later, an officer determined that the car belonged to [petitioner's] girlfriend.

[Petitioner's] testimony from the first trial was read into the record at his second trial. [Petitioner] testified that he went to Gray's house on March 26 because Gray knew someone who might want to buy the car owned by [petitioner's] girlfriend. They drove together in the girlfriend's car to the house on Humboldt Hill Road to meet with the potential buyer. When no one was home he and Gray decided to wait and play with a dog in the backyard. Gray, who had been looking through the fence, ran away when Barrera arrived. He looked through the fence and saw Barrera walking hurriedly towards the gate with a gun in his hand. [Petitioner] tried to run, but gave up because Barrera was right behind him. He turned around and put his arms in the air. When Barrera's brother called to Barrera from the other side of the fence, [petitioner] grabbed the top of the gun. During the ensuing struggle, one shot was discharged from the gun, which burned his hand. After the shot was fired, the top of the gun did not slide back into place, which lead him to believe the gun was jammed or out of bullets. He ran towards the front of the house, jumped into Barrera's brother's car and drove away. Later, he parked the car and ran into the bushes. [Petitioner] claimed that although he had never talked to

Barrera, he knew who he was because Barrera's ex-girlfriend was also an ex-girlfriend of his. He suggested that Barrera came after him with a gun because there were rumors circulating that [petitioner] was the father of Barrera's son with the ex-girlfriend.

At the second trial, the ex-girlfriend explained that she was Barrera's ex-girlfriend and that she and Barrera had a son together. She admitted that she and [petitioner] were friends, but denied that they had ever dated.

[Petitioner's] probation officer testified that after [petitioner] was identified as a suspect, she advised him through his girlfriend that she would seek an arrest warrant if he did not surrender by the next Monday, April 1. When he did not turn himself in, she filed a petition to revoke his probation. [Petitioner] eventually surrendered and was arrested on December 2, 2003.

*The Defense Case*

[Petitioner] testified again at the second trial. His testimony regarding the events of March 26 was substantially the same as at the first trial. [Petitioner] again denied entering Barrera's house and claimed he took the car only to get away from Barrera. He did not call the police or his probation officer after the incident, but later heard through his girlfriend that he had until Monday to turn himself in. He initially stayed in the area for a few weeks and then went to Nevada.

*The Prosecution's Case Reopened*

Barrera was recalled to testify regarding two guns that he purchased after the incident. First, on March 27 he bought a Glok. Then, in August of the same year he bought a .45 for his girlfriend. He also testified that a few years before his gardener had found the .22 gun in his backyard and had given it to him. The gun store owner confirmed the purchases.

(Ex. F at 3-6.)

### III. DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

1  Court of the United States; or (2) resulted in a decision that was based on an unreasonable
2  determination of the facts in light of the evidence presented in the State court proceeding."
3  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas
4  relief is warranted only if the constitutional error at issue had a "substantial and injurious
5  effect on the verdict." Penry v. Johnson, 532 U.S. 782, 796 (2001) (internal quotation and
6  citation omitted).

7      A state court decision is "contrary to" clearly established Supreme Court precedent if
8  it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"
9  or if it "confronts a set of facts that are materially indistinguishable from a decision of [the
10 Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams,
11 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court
12 may grant the writ if the state court identifies the correct governing legal principle from [the
13 Supreme] Court's decisions but unreasonably applies that principle to the facts of the
14 prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because
15 that court concludes in its independent judgment that the relevant state-court decision applied
16 clearly established federal law erroneously or incorrectly. Rather, that application must also
17 be unreasonable." Id. at 411.

18     Section 2254(d)(1) restricts the source of clearly established law to the Supreme
19 Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme
20 Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme]
21 Court's decisions as of the time of the relevant state-court decision." Id. at 412. "A federal
22 court may not overrule a state court for simply holding a view different from its own, when
23 the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540
24 U.S. 12, 17 (2003).

25     The Court of Appeal, in its opinion on direct review, addressed five of the claims
26 petitioner raises in the instant petition. (See Ex. F.) The Court of Appeal thus was the
27 highest court to have reviewed those claims in a reasoned decision, and, as to those claims, it
28 is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker,

6

1  501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).
2  As to the claims for which there is no reasoned opinion available, the United States Supreme
3  Court has recently clarified that a federal habeas court, in applying the review provisions of
4  28 U.S.C. § 2254(d), looks to the result reached by the highest state court, and the absence of
5  reasoning does not prevent application of the standard of review set forth in § 2254(d). See
6  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

B.  Petitioner's Claims

Petitioner asserts the following grounds for relief: (1) the prosecution suppressed favorable, material evidence that police found "for sale" signs in the car petitioner left at Barrera's house, which would have supported petitioner's defense that he was trying to sell the car for his girlfriend; (2) with respect to the charge of felon in possession of a gun, the trial court erred by giving an instruction on suppression of evidence as relevant to consciousness of guilt, because there was no evidence petitioner had tried to dispose of a weapon; (3) the trial court erred by failing to instruct the jury on (a) trespass as a lesser-included offense of burglary, and (b) the doctrine of implied invited public access; (4) the evidence was not sufficient to support a conviction on attempted burglary as a lesser-included offense of burglary; (5) petitioner was denied effective assistance of trial counsel; and (6) cumulative error. The Court addresses each claim in turn, including any sub-claims contained therein.

1.  Brady Claim

Petitioner claims the prosecutor engaged in misconduct by failing to disclose the existence of "for sale" signs in petitioner's girlfriend's car, the car petitioner left at Barrera's house, which vehicle subsequently was impounded and inventoried. The Court of Appeal summarized the background for this claim as follows:

> "The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant. [Citation.] [¶] But such evidence must be both favorable to the defendant and material on either guilt or punishment. [Citation.] . . . [Petitioner] contends that the prosecution violated this duty by failing to disclose that police investigators found "for sale" signs when they inventoried his girlfriend's car. He claims this evidence was both favorable and material because it corroborated his testimony that he had gone

7

> to Barrera's house to show the car to an interested buyer.
>
> The failure to disclose the signs was first raised in a *Marsden*[4] motion and in a pro se motion for new trial, both made after the jury's verdict in the second trial. Included with these motions was a letter written to defendant by his probation officer after the second trial in which she states, "I was originally told by Nickee that her car was for sale, and you had placed the signs in the car. I later verified this when I spoke to officers. I believe it was Officer S. Quenell that verified that he also saw the signs in the backseat, floorboard area of Nickee's car." In those motions, [petitioner] did not assert that the prosecution should have disclosed that the signs were recovered from the car. Rather, he argued that he received ineffective assistance of counsel because his attorney failed to investigate whether the officers found the signs when they searched the car. In his pro se submission, he stated that he told his attorney prior to trial that the signs were in the car but that the attorney did not investigate.

(Ex. F at 6-7) (footnote renumbered).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty to disclose such evidence applies even when there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107 (1976). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

The Court of Appeal rejected petitioner's claim on the ground that the evidence was available to the defense, i.e., that it was not "suppressed." (See Ex. F at 7.) Citing People v. Salazar, 35 Cal. 4th 1031, 1048-49 (2005), the Court of Appeal noted that, under California law, evidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it by the exercise of reasonable diligence. (Id.) The Court of Appeal found petitioner could not make such showing here, as he had admitted he knew about the "for sale" signs all along and indeed admitted he told his attorney about the signs prior to trial. (Id.)

---

[4] *People v. Marsden*, (1970) 2 Cal.3d 118.

The record shows the Court of Appeal applied Brady in a reasonable manner. In his new trial motion, petitioner stated he had known about the "for sale" signs. (RT (8/5/04) 677-78; CT (vol. 2) at 299.) Petitioner also stated he told his counsel about the signs before trial, and further stated he told his probation officer his counsel had failed to bring the signs to the jury's attention. (RT (8/5/04) 677-78; CT (vol. 1) at 74; CT (vol. 2) at 299.) Indeed, petitioner was in the best position to know if there were any "for sale" signs in the car, given that he was the last person in the vehicle and claimed to know where the signs were kept. (CT (vol. 1) at 74; CT (vol. 2) at 299.) In sum, it was reasonable for the Court of Appeal to conclude evidence of the signs was not suppressed. See Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose.") (internal quotations and citations omitted).

Moreover, none of the verdicts was inconsistent with petitioner's testimony that he was driving a car that was for sale. Even had the jury heard additional evidence that the car was for sale, it is not reasonably probable that "the result of the proceeding would have been different." See Bagley, 473 U.S. at 682.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2. CALJIC No. 2.06

Petitioner claims the trial court erred in instructing the jury pursuant to CALJIC No. 2.06. The jury was instructed thereunder as follows:

> If you find that the defendant attempted to suppress evidence against himself in any manner, such as by concealing evidence, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

(CT (vol. 2) 201.) Petitioner argues this instruction lowered the prosecution's burden of proof. Petitioner also argues there was no evidence to support the instruction because there

9

was no evidence a gun had been suppressed.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.

The Court of Appeal rejected petitioner's claim, reasoning as follows:

> Contrary to [petitioner's] contention, it is well settled that CALJIC No. 2.06 does not lessen the prosecution's burden of proof. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102 (*Coffman*); *People v. Jackson* (1996) 13 Cal.4th 1164, 1223-1224.) The instruction provides that the jury may infer that the defendant acted with a consciousness of guilt only if it first finds that the defendant attempted to suppress evidence, and that a defendant's attempt to suppress evidence is not in itself sufficient to prove the defendant's guilt. "The cautionary nature of the instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson*, supra, at p. 1224.)
>
> It is also well settled that CALJIC No. 2.06 is properly given if there is some evidence in the record that, if believed, would support an inference that the defendant did suppress evidence, reflecting a consciousness of guilt. (*Coffman*, supra, 34 Cal.4th at p. 102.) The facts supporting such an inference need not be conclusively established before CALJIC No. 2.06 may be given. (*Coffman*, supra, at p. 102.) Here, the prosecutor argued in closing: [Petitioner] "abandoned the victim's car. He hid the keys and the suitcase that might link him to the car in the . . . woods where they were found by Sergeant Hanson. The money is gone. The .22 caliber pistol is gone. The .45 caliber pistol is gone. And he changed his appearance to make identification more difficult when he finally came in some eight months later and surrendered." [Petitioner] acknowledged taking the victim's car and leaving it in a remote area. Although he denied trying to hide the suitcase and keys, the fact that they were found in the bushes is some evidence to the contrary. The evidence was sufficient to support the contested instruction.
>
> The court was not required to find that [petitioner] attempted to suppress the weapons prior to giving this instruction. CALJIC No. 2.06 was given along with a group of general instructions following the instructions that the jury should "[c]onsider the instructions as a whole and each in light of all the others" and that "[t]he order in which the instructions are given has no significance as to their relative importance." The general instruction was not directly linked to the count charging [petitioner] with unlawful possession of a firearm and, in any event, did not give rise to a presumption of guilt on count 3. (*See Coffman*, supra, 34 Cal.4th at p. 102 [CALJIC No. 2.06 does not "give rise to an irrational presumption of guilt of all charges, without limitation, from

10

evidence relevant only to a theft-related offense"].)

(Ex. F at 8-9.)

In sum, the California Supreme Court, in People v. Coffman, 34 Cal.4th 1 (2004), has interpreted CALJIC 2.06 and, based on that interpretation, has held said instruction does not lower the prosecution's burden of proof. See id. at 102. This Court must defer to the California courts' interpretation of California law. See Estelle, 502 U.S. at 67-68 (holding federal writ not available for alleged error in the interpretation or application of state law); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (holding federal courts are "bound by a state court's construction of its own penal statutes"). Further, even if this Court were not so bound, it would reach the same conclusion.

The Court of Appeal also reasonably rejected petitioner's argument that there was no foundational evidence supporting the instruction. As noted by the Court of Appeal, a police officer found a suitcase and keys in the bushes near Barrera's brother's car (RT (5/28/04) 67; RT (7/29/04) 24-25, 73-75, 159-61), which vehicle petitioner admitted to having taken and abandoned (RT (5/28/04) 104-06; RT (8/2/04) 363). Additionally, photographic evidence showed petitioner had changed his appearance before he surrendered. (RT (5/28/04) 10-11, 55-56; RT (7/29/04) 26, 41, 90-91.) Barrera had been able to identify petitioner's photograph from a lineup on the day of the burglary but was unable to identify petitioner at trial. (Id.) In sum, there was ample evidence to support the contested instruction.[5]

Accordingly, petitioner is not entitled to habeas relief on this claim.

3. Failure to Give Instructions

Petitioner claims the trial court, with respect to the burglary charge, erred by failing to instruct on (1) the lesser included offense of trespass, and (2) the doctrine of implied invited public access. The Court of Appeal summarized and rejected this claim as follows:

---

[5] As the Court of Appeal also noted, the instruction, contrary to petitioner's assertion, was not linked in any way to the charge of felon in possession of a firearm. The evidence highlighted by the prosecutor in his closing argument was directed to evidence that petitioner had committed a burglary and had tried to hide the evidence, not that he possessed a firearm.

11

> "A trial court must instruct the jury sua sponte on an uncharged offense that is lesser than, and included in, a greater offense with which the defendant is charged 'only if "there is evidence,"' specifically, 'substantial evidence,' "'which, if accepted . . ., would absolve [the] defendant from guilt of the greater offense" but not the lesser.'" (*People v. Waidla* (2000) 22 Cal.4th 690, 733, italics & citations omitted.) "The instruction shall not be given when there is no evidence the offense was less than that charged." (*People v. Pham* (1993) 15 Cal.App.4th 61, 67.) . . .
>
> [Petitioner] contends that the trial court erred in failing to instruct the jury sua sponte on trespass as a lesser included offense of burglary. In *People v. Waidla*, supra, 22 Cal.4th at page 733, the court acknowledged that trespass can be a lesser included offense of burglary as charged, "on the ground that the burglary here, which is based on larceny, comprises elements embracing intent to steal [citation], whereas trespass comprises supposedly the same elements with the pertinent exception of such intent [citation]." However, in *Waidla*, even though there was some evidence that the defendant did not intend to steal all of the items taken from the victim's home, there was no evidence that he did not intend to steal some of them, so that there was no need to instruct on the lesser trespass offense. Here, there is no substantial evidence on which the jury could have concluded that [petitioner] unlawfully entered Barrera's house without the intent to steal. [Petitioner] asserts that the jury could have concluded that "although there had been no entry into a building and no actual theft therefrom, there had been an unlawful entry onto property." But [petitioner] was not charged with the unlawful entry into the backyard. He was charged with unlawful entry into the house. The complaint alleges that he "did willfully, unlawfully and feloniously enter an inhabited dwelling house . . . occupied by Marlon Barrera, with the intent to commit larceny." Had the jury credited his testimony that he went into the back yard simply to play with the puppy while awaiting the return of the prospective car buyer, he would have been entitled to an acquittal under the instructions that were given.
>
> [Petitioner's] additional contention that the court erred in failing sua sponte to instruct the jury to decide whether he was an implied invitee on Barrera's property is similarly without merit. Again, based on the charging document, the question was not whether he was invited into the yard, but whether he was invited into the house. In any event, there is no substantial evidence to support an implied invitation to the public in either location. [Petitioner] states, "An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises or local custom." He fails, however, to point to any evidence based on which the jury could reasonably have concluded he was implicitly invited into Barrera's fenced back yard, let alone his house.

(Ex. F at 11-12.)

A defendant is entitled to an instruction on a theory of defense only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotation and citation omitted). Here, as noted, petitioner claims the instructions should have been given sua sponte. Due process does not require an instruction be given unless the evidence

12

1  supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding instruction on lesser
2  included offense required only "when the evidence warrants such an instruction"); see also
3  Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (finding insufficient evidence to
4  warrant self-defense instruction). Moreover, even "[a] state trial court's refusal to give [a
5  requested] instruction does not alone raise a ground cognizable in a federal habeas corpus
6  proceeding." Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). "The error must so
7  infect the entire trial" that the petitioner was deprived of the fair trial guaranteed by the
8  Fourteenth Amendment. Id. "Whether a constitutional violation has occurred will depend
9  upon the evidence in the case and the overall instructions given to the jury." Duckett v.
10 Godinez, 67 F.3d 734, 745 (9th Cir. 1995).

11       Here, petitioner's claim that he was entitled to a jury instruction on trespass as a lesser
12 included offense of burglary fails for two reasons. First, petitioner fails to state a viable
13 claim for habeas relief because the failure of a state trial court to instruct on lesser included
14 offenses in a non-capital case, such as this, does not present a federal constitutional claim.
15 Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).

16       Further, as found by the Court of Appeal, there was no substantial evidence on which
17 the jury could have found petitioner entered the house without the intent to steal. The
18 prosecution's evidence was that petitioner was guilty of burglary as charged, whereas
19 petitioner's evidence was that he was not guilty of any offense.

20       With regard to petitioner's claim that he was entitled to a jury instruction on the
21 doctrine of implied public access, this Court, having reviewed the record, agrees with the
22 Court of Appeal's finding that there was no evidence on which a jury could have concluded
23 petitioner was implicitly invited onto Barrera's property; consequently, petitioner had no
24 right to the instruction as a matter of due process. See Hopper, 456 U.S. at 611. In any
25 event, had the jury believed petitioner's account that he was on Barrera's property to sell a
26 car, it would not have convicted him of attempted burglary; consequently, it cannot be said
27 that an instruction on invited public access would have resulted in a different verdict. See
28 Penry, 532 U.S. at 796.

Accordingly, petitioner is not entitled to habeas relief on this claim.

4. <u>Insufficient Evidence</u>

Petitioner claims there was insufficient evidence to support his conviction for attempted burglary. The Court of Appeal addressed this claim in conjunction with petitioner's claim that the trial court should not have instructed on attempted burglary as a lesser included offense of burglary:

> [Petitioner] contends that the trial court erred in instructing the jury on attempted burglary as a lesser included offense of burglary.[6] [Petitioner] argues that if the jury credited Barrera's testimony that his house had been ransacked and his gun and money were missing, the jury would have found him guilty of burglary. Once the jury rejected the burglary charge, he argues, there was no evidence of an "ineffectual or abandoned entry" on which to base an attempted burglary conviction. We disagree.

---

[6] The jury was instructed as follows: "Defendant is accused in Count One of having committed the crime of burglary, a violation of section 459 of the Penal Code. [¶] Every person who enters any building with the specific intent to steal, take, and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of that property or with the specific intent to commit a felony is guilty of the crime of burglary in violation of Penal Code section 459. [¶] A building is a structure. [¶] It does not matter whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person entered a building; and [¶] 2. At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property; or at the time of the entry, that person had the specific intent to commit the crime of robbery." (CALJIC No. 14.50.) "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. [¶] In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design." (CALJIC No. 6.00.)

14

> Initially, even if there is an inconsistency between the jury's failure to find [petitioner] guilty of burglary while convicting him of attempted burglary, the inconsistency does not undermine the validity of the conviction so long as there is substantial evidence to support it. (*People v. Lewis* (2001) 25 Cal.4th 610, 655-656.) Moreover, the evidence surrounding the attempted burglary is not as clear cut as [petitioner] suggests. Barrera testified that when he arrived home he saw someone peeking out of his yard and then saw the suspects trying to climb his fence, abandoning their car in his driveway. [Petitioner] conceded that he peeked through the gate and then tried to escape over the backyard fence. This evidence supports a finding of an aborted criminal effort, even if the jury believed [petitioner's] testimony that he never entered the house. Under all of the evidence, including the disheveled condition of the home, the jury more likely may have concluded that [petitioner] entered the house with the intent to steal, ransacked the premises looking for something to take, but left without anything when interrupted by Barrera's unexpected return. Although under this version the burglary would have been completed, [petitioner] was not harmed because the jury found only an attempted burglary. (*See People v. Lowen* (1895) 109 Cal. 381, 383-384 [although defendant technically was not guilty of attempted burglary, the commission of burglary implies an attempt to commit it so that conviction of attempted burglary must be upheld where there is substantial evidence of a completed burglary]; *People v. Cuccia* (2002) 97 Cal.App.4th 785, 796 [defendant "cannot complain that the jury chose to find him guilty of attempted grand theft" where there was substantial evidence of a completed grand theft]; *People v. McConnell* (1927) 80 Cal.App. 789, 792 ["A defendant informed against for the crime of burglary may be convicted of an attempt to commit burglary in the second degree, where the evidence tends to sustain a verdict of burglary in the first degree"].) Hence, any error with regard to the attempted burglary instruction was without prejudice to defendant.[7]

(Ex. F at 12-14) (footnotes renumbered).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Consequently, where a state prisoner alleges the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, such petitioner states a constitutional claim, Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, id. at 324. For purposes of determining such claim, the relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

---

[7] For the same reasons, [petitioner's] additional contention that there was insufficient evidence of an attempted burglary is without merit.

1 crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Where the record
2 supports conflicting inferences, a federal habeas court must presume the trier of fact resolved
3 any such conflicts in favor of the prosecution, and must defer to that resolution. Id. at 326.
4 Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,
5 may the writ be granted. Id. at 324.

Here, the Court first notes that the California courts have resolved the instant issue against petitioner. See People v. McConnell, 80 Cal. App. 789, 792 (1927) (holding conviction for attempted burglary may be upheld where evidence is sufficient to support conviction for completed burglary); see also People v. Lewis, 25 Cal. 4th 610, 655-56 (2001) (holding even "inherently inconsistent verdicts are allowed to stand"). In particular, the record of the trial contains the following evidence: Gray and petitioner went to Barrera's house together where they were found in the backyard (RT (7/29/04) 10, 15-17, 40-41); both men fled when Barrera and his brother arrived (id.); Barrera's house was in disarray and a gun was missing (RT (7/29/04) 22-23, 89); Barrera usually left the doors to the garage and backyard closed but unlocked (RT (7/29/04) 27-28); when Barrera arrived home that day, the doors were open (id.); Barrera's neighbor, Dana Porter, saw Gray in Porter's backyard soon after Porter heard gunshots (RT (7/29/04) 150-51); Gray at that time was wearing gloves and appeared to have something under his sweatshirt (id.). Such evidence was sufficient to support a conviction for a completed burglary by two accomplices acting in concert, and, consequently, under California law, sufficed to support a conviction for attempted burglary as well. As noted, this Court must defer to the California courts' interpretation of California law. See Estelle, 502 U.S. at 67-68 (holding federal writ not available for alleged error in interpretation or application of state law).

Alternatively, because there was no witness to an entry into the home itself, the jury reasonably could have found, based on the evidence, that petitioner was attempting to commit a burglary by opening an unlocked door and was interrupted by the arrival of the homeowner.

In sum, viewing the evidence in the light most favorable to the prosecution, a rational

trier of fact could find petitioner's actions constituted attempted burglary. See Jackson, 443 U.S. at 319.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 5. Ineffective Assistance of Counsel

Petitioner claims he was denied effective assistance of counsel because (a) counsel was not informed of the existence of the "for sale" signs; (b) counsel failed to object to the instructions on suppression of evidence and attempted burglary; (c) counsel failed to move for judgment notwithstanding the verdict with respect to attempted burglary; and (d) counsel failed to request instructions on trespass and implied invitees. With the exception of the first contention, petitioner did not raise any of these contentions in the Court of Appeal. (See Exs. C, F.)

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but "effective" assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim based on ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, the petitioner must establish prejudice resulting from his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the Strickland test "if the petitioner cannot even establish incompetence under the first prong." Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

A "doubly" deferential judicial review applies in analyzing ineffective assistance of

counsel claims under 28 U.S.C. § 2254. See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11 (2011). The rule of Strickland, i.e., that a defense counsel's effectiveness is reviewed with great deference, coupled with AEDPA's deferential standard, results in double deference. See Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010). Put another way, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable[;] [t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011). Moreover, because Strickland's standard for assessing defense counsel's effectiveness is a "general" one, state courts have "greater leeway in reasonably applying that rule," which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." See Cheney, 614 F.3d at 995 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Here, with the exception of petitioner's first contention of ineffectiveness, based on a purported Brady violation, petitioner presents no argument in support of his ineffective assistance of counsel claims. Moreover, petitioner's ineffective assistance claims are, in each instance, based on claims the Court has discussed above and found unavailing.

In particular, to the extent petitioner argues the prosecution's Brady violation deprived petitioner of properly informed legal assistance, the Court, as discussed above, has found no Brady violation; consequently, petitioner's related claim that the prosecution's purported suppression of evidence denied him effective assistance of counsel likewise fails. Petitioner next points to his attorney's failure to object to the instructions on suppression of evidence and attempted burglary; as discussed above, however, this Court has found said instructions were proper, and, consequently, such related claim fails. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial counsel cannot have been ineffective for failing to raise a meritless objection.") Similarly, as there was substantial evidence to support a conviction for attempted burglary, it would have been futile for counsel to move for judgment notwithstanding the verdict with respect thereto, or, given the lack of evidence to support either trespass or implied invitation, to have asked for instructions thereon. Under such circumstances, petitioner is unable to meet either prong of the Strickland test, and thus has

18

not shown the state court's decision as to these claims involved either an unreasonable application of Supreme Court law or an unreasonable determination of the facts.

Accordingly, petitioner is not entitled to relief on this claim.

### 6. Cumulative Error

Petitioner claims the foregoing asserted errors, when considered in combination, resulted in prejudice. For the reasons discussed above, the Court has found no constitutional error exists, let alone multiple errors. As there has been no error, there can be no due process violation based on a theory of "cumulative" error. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (holding, where there are no errors, there can be no cumulative error).

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

## C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

//
//
//
//
//

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is hereby DENIED, and a certificate of appealability is hereby DENIED.

Respondent's request to file an oversized brief in support of the answer is hereby GRANTED. (Docket No. 38-2.)

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden Connie Gipson on the docket as the respondent in this action.

IT IS SO ORDERED.

DATED: March 26, 2012

_____
MAXINE M. CHESNEY
United States District Judge